EAST TENN., VA. & GA. RAILWAY CO. *v.* HEAD.

It appearing that if the railway company negligently erected the danger signal post by placing it too near the track of the railway, this fact must have been well known by the deceased engineer, the plaintiff's husband, and it also appearing by uncontradicted evidence that he unnecessarily left his place upon the locomotive and exposed himself to danger for the purpose of getting a view of a hot journal, when he could have done so safely without leaving that place, his death was caused, in part at least, by his own negligence, and his widow was not entitled to a recovery from the company.

December 18, 1893.

Action for damages. Before Judge MARSHALL J.
CLARKE. Fulton superior court. March term, 1893.

DORSEY, BREWSTER & HOWELL, for plaintiff in error.
W. M. BRAY, contra.

LUMPKIN, Justice.

A post was erected by the defendant near the line of
its railway, for the purpose of supporting a contrivance
commonly called a "telltale," designed to warn em-
ployees upon trains of their approach to a bridge. The
plaintiff's husband, an engineer in the service of the
company, left his seat upon the locomotive for the pur-
pose of looking at a hot journal under the tender.
While leaning outward and looking downward for this
purpose, the locomotive being in motion, his head came
in contact with this post, and he was killed. The plain-
tiff, his widow, brought an action to recover damages
for his homicide, alleging that it resulted from the neg-
ligence of the company in placing this post too near
the track, and that her husband was without fault and
blameless.

As to the distance of the post from the rail at the
time of the killing, the evidence was decidedly conflict-
ing. Assuming as true the evidence for the plaintiff,
there can be no doubt that the company was negligent
in this respect. On the other hand, according to the
evidence for the defence, a contrary conclusion might
well be reached. In the view we take of this case,
however, it is immaterial what may be the truth as to
this disputed question. Granting that the post was
erected too near the track, the evidence establishes al-
most to a certainty, if not absolutely, that this fact
must have been known to the deceased. He passed over
the road almost daily for a considerable period of time;
the post, as already stated, was near a bridge; and in
view of all the evidence, it is almost impossible to con-

ceive that he was ignorant of the existence of the post, or unaware of the distance it stood from the track. Under these circumstances, although it may have been his duty to look after the journals under the tender and keep himself informed as to their condition, we think he should have exercised some care in selecting the place at which he would attempt to perform this duty. It would have involved only a few seconds delay to wait till the post was passed, and common prudence surely would have suggested the propriety of first looking to see whether there was anything which would render this attempt perilous at the particular point on the line of the road which his train was then passing. Certainly, if he could get a view of the journal without exposing himself to danger at all, he ought to have done so. The evidence is clear, strong and undisputed that, without leaving his seat in the cab, and without subjecting himself to any peril whatever, he might have seen the hot journal fully as well as from the position he actually assumed. To look at the journal from his seat would, it is true, have required a slight inclination of his head outside of the window of the cab, but not enough to bring his head in contact with the post, or in such proximity to it as to be dangerous. Inasmuch, therefore, as there was a way in which he could have performed his duty with respect to the hot journal with absolute safety, and he disregarded the safe method of so doing and adopted another which was in the highest degree dangerous, he was certainly guilty of some contributory negligence, and this being so, his widow had no right to recover from the company. Under the facts appearing in the record, the verdict in her favor was contrary to law, and the court ought to have granted a new trial.            *Judgment reversed.*