CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE, V. & G. RY. CO. (CLARK, Intervener).

(Circuit Court, N. D. Georgia. October 1, 1895.)

1. RAILROADS—NEGLIGENCE—STATION-LIMIT BOARD.

Upon an application of one C., intervening in a railroad foreclosure suit, and claiming damages from the receivers of the road for personal injuries, it was found from the evidence that C., a fireman on a locomotive, while in the discharge of a duty assigned him by the engineer, and in a position which he could naturally and properly assume for the purpose of such duty, was knocked from the engine by a station-limit board placed near the track. *Held*, that it followed from these circumstances that the board was too near the track, and was a dangerous structure, the maintenance of which was negligence in the receivers.

2. SAME—DUTIES OF FIREMAN.

*Held*, further, that a fireman on a locomotive, whose duties are to look after the coal and steaming of the engine, is not bound to observe the distance from the track of all objects along the line of the road, so as to make him chargeable with contributory negligence in failing to remember and avoid such an object when called upon to lean out of the cab in the discharge of a duty outside his usual routine.

Arnold & Arnold, for intervener.
Dorsey, Brewster & Howell, for defendant.

NEWMAN, District Judge. Under orders of this court in the case above named, Samuel Spencer, Henry Fink, and C. M. McGhee are receivers operating the property of the defendant corporation. The case now before the court is the intervention of Martin Clark, claiming damages alleged to have been inflicted on him while in service of the receivers as fireman on the freight train. The facts and the issues involved will appear fully by the report of the special master to whom the intervention was referred, which report is as follows:

To the Honorable the Judges of Said Court: The above-stated intervention was duly referred to me, by an order of the court, and I have taken the evidence and heard the argument in the case, and report as follows:

### Statement of the Case.

The intervener alleges that he was employed as a fireman by the receivers operating the East Tennessee, Virginia & Georgia Railway on June 14, 1894, and that on the night of that day, while in the proper discharge of his duties as such fireman, he was knocked off the engine attached to a freight at a point south of Powder Springs, on the line of said railway, and in the Northern district of Georgia. He alleges that he was knocked off said en-

gine by a station-limit board, which he alleges was located too near the track; that, at the time of the injury to himself, he had received an order from the engineer to look out of the gangway and inspect the condition of a hot box, and, while leaning out of said gangway, he was struck on the side of the head by a station-limit board, and knocked from said engine to the ground. He alleges that the train was running at the rate of twenty-five miles an hour. He sets forth in his petition, specifically, the extent of his injuries, and their character. The negligence which he alleges against the defendant, as the cause of the injury, was, that the station-limit board was located too near the track; rendering it unsafe for employés, in the proper discharge of their duties. The defendants admit that the intervener was employed as a fireman at the time alleged, and that said railway was operated by them as receivers. They deny any negligence, and claim that said station-limit board was not located too near the track, but at a reasonably safe distance, and that an injury therefrom could only happen by the negligence of an employé in leaning out too far, or from an improper place on said engine. They claim, further, that the intervener was fully aware of the position of said station-limit board, and its nearness to the track, or could have ascertained it by the exercise of ordinary diligence. They deny, as a matter of fact, that the intervener was injured by being struck by the said station-limit board, but insist that he either accidentally fell from said engine, or that the accident was the result of his own negligence. These are the contentions of the parties.

The evidence in the case is somewhat voluminous and contradictory. After a careful consideration of the same, I am of the opinion that the following conclusions are reasonably deducible therefrom: The station-limit board in question, a few days after the accident, was taken up by the employés of the defendant, and removed three feet further from the track than where it had originally been placed. From an actual measurement, it was shown that the post was located, at the the time of the accident, six and one-half feet from the near rail of the track, the measurement being from the hole left in the ground where the post formerly stood. The post was about seven feet high from the ground, having at the top a board with the words "Station Limit" printed thereon, extending towards the rail eighteen inches. This would bring the end of the board on top of the post four and one-half feet from the near rail of the track. It was shown from the evidence that the engine extended over the rail from two to three feet. These facts clearly show that the station-limit board was sufficiently near the track to have struck the employé, if he had been leaning out from the gangway two and one-half feet. Was this station-limit board, therefore, so near the track as to render it dangerous to servants of the defendant in the proper and reasonable discharge of their duties? On this point the evidence of the defendant fixes the customary and safe distance of such obstructions at least eight feet from the rail of the track,—one foot and a half further than the actual measurement makes this station-limit board. In view of these facts, I think it is fair to conclude that this particular post was located too near the track.

In the next place, was the intervener injured, as he claims, by having been struck by said station-limit board and thrown to the ground. On this point there is some doubt, but my conclusion is that the intervener was knocked from said engine, by leaning out therefrom, in obedience to an order of the engineer, for the purpose of looking at the condition of a hot box on one of the cars. The facts proven, which establish the correctness of this theory, are as follows: The fireman was knocked off at or near the station-limit board. This is shown by the uncontradicted evidence of all the witnesses. The intervener swears positively that he felt something strike his head while he was standing, looking out at the hot box; that he knew something hit him, but he could not tell what it was that knocked him from the engine. Both physicians who testified in the case swore that, when they examined the head of the intervener, they discovered on the back of his head, on the right-hand side, a wound, and that his face, his nose, and his eyes were also injured and mangled. This testimony shows that the intervener received injuries both in front and on the back side of his head. Add to these facts the further fact that this

station-limit board was sufficiently near to have caused the accident, and I think the conclusion that the intervener was knocked off by the board is reasonably certain, unless there are other facts that account for this injury. It is insisted by the defendant that the station-limit board did not knock the intervener off the engine—First, because the evidence shows that he could not have been struck by said board in the manner as testified to by him, it being impossible for a man to lean out far enough to come in contact with the board. This conclusion, the master thinks, is based upon the testimony of witnesses who make their calculations from the distance the board is now from the track, and not from the distance the board was at the time of the accident. In addition to these facts, and on the request of the master, the engine was furnished by the defendants, and, in company with the counsel for both sides, a practical experiment was made; and it was shown to my satisfaction that, while the injury did not occur just as described by the intervener in his testimony, yet he could have been struck by the board substantially as described by him. The post was taken up, and placed in the hole where it was located at the time of the accident. The intervener was located as he testified he was, and the engine moved by the board. It didn't strike the head of the intervener, but it was seen by the master that a very slight change in the position of the intervener made it possible for him to have been stricken by said board. In view of the fact that it was night, that the engineer ordered the intervener to look out and see the condition of the hot box, I don't think it reasonable to hold the intervener to an unerring recollection of his position at the time of the accident, provided the facts show that in the discharge of his duty, and without negligence on his part, he could have been struck by said station-limit board while leaning out of said gangway and looking at the condition of said hot box; and the experiment satisfies my mind that such could have been the result. In the next place, it is contended by defendants that the body of the intervener was found, shortly after the accident, some sixty or ninety feet south of the station-limit board, in the direction in which the train was running. This fact, it is claimed, clearly shows that he could not have been knocked off by the board, because he was too far from it, and must have fallen off accidentally, or by his negligence. The evidence on this point shows that the cap of the intervener was picked up some thirty feet nearer the station-limit board than his body, and the condition of the ground between the cap and the body indicated that he either had been dragged or had crawled over the intervening space; but I don't think that the fact that the intervener was found at this distance south of the station-limit board, in the light of the other facts in evidence, is sufficient to show that he was not knocked off by the board, or proved a theory of an accidental or negligent falling from the engine. The testimony showing the distance of intervener from the post was not by exact measurement, but an opinion as to distance, and is therefore not sufficiently reliable to overcome the other undoubted facts in the case going to establish the theory that he was knocked off by the station-limit board. The testimony of the witnesses also shows that the train was running at the rate of twenty-five miles an hour, and that the tendency of a falling body is to follow the direction of the train. I am clear that it is altogether reasonable to account for the distance of the body from the post on the theory that in falling from the engine the momentum of the train carried the body such distance. I am aware of the rule of law that negligence must be shown by an affirmative proof, or that the facts upon which it is to be inferred as a reasonable inference must be established by affirmative proof; in other words, that the existence or nonexistence of the facts upon which the inference is based must not be left to conjecture. But I am of the opinion that the facts of this case, and the conclusions fairly deducible therefrom, reasonably establish the truth of the theory as contended for by intervener,—that he was knocked off of said engine by the station-limit board, and that said board was located too near the track for the safety of the servants of the defendants, in the ordinary and diligent discharge of their duties. I think, as matter of law, an obligation rests upon masters to keep the right of way and the vicinity of the track clear from all obstructions that would render an

injury to their servants in the ordinary discharge of their duties, or in case of sudden emergencies, likely or probable.

My conclusion, therefore, from a consideration of the facts of this case up to this point, is that the defendants are liable to the intervener, unless the injury was caused either by his own negligence, or that the dangerous character of the station-limit board, and its nearness to the track, was known to him, or could have been known by the exercise of ordinary diligence on his part. The defendants contended on this point that the intervener was guilty of negligence in leaning from the gangway; that the safer place, and the proper place, to look out, was from the window of the engine cab. The evidence, however, does not sustain this contention. It shows that it is the usual practice to look out either from the gangway, or from the window; that the place of looking out is the place where the employé happens to be at the time of the emergency which caused him to look out, and one place is about as safe as the other. Counsel for the defendant, in this branch of the case, cite the decision of our supreme court in the case of Railway Co. v. Head, 92 Ga. 723, 18 S. E. 976. I do not think the facts in this case are altogether analogous to those in the Head Case. In the Head Case, according to the opinion of the supreme court, the evidence was clear, strong, and undisputed that without leaving his seat in the cab, and without subjecting himself to any peril whatever, the engineer might have seen the hot journal fully, but that he left his place of safety, and went to a dangerous position on the locomotive, for the purpose of getting a view of the journal. What dangerous place he went to does not appear from the evidence in the Head Case, but the supreme court says it was a dangerous place. The evidence in this case we are now considering does not show that the gangway—the place from where the intervener looked—was necessarily a dangerous place, nor did he leave his position in the cab, and go to the gangway, for the purpose of looking at the hot box, but he was already in the gangway when ordered by the engineer to look out. Each case must stand on its own facts; and I hold, under the facts in this case, that the mere fact that the intervener looked out of the gangway, and did not go to the cab window, was not an act of contributory negligence on his part.

In the next place, counsel for the defendants contend that even conceding, for the sake of argument, that this intervener was injured by having been knocked off by the station-limit board, and that the station-limit board was too near the track, yet the position of the station-limit board was well known to the fireman at the time of his injury, or should have been known to him by the exercise of ordinary diligence. They contend that having been an employé of the road, running by the said station-limit board, in the progress of his employment, for several years, his opportunities for finding out the nearness of the station-limit board were sufficient to put him on notice of its position. They also rely, in support of this position, on the Head Case, above cited. In the Head Case the post which knocked the engineer off was the contrivance commonly called a "tell-tale," designed to warn employés on the train of their approach to a bridge; and the supreme court say that, granting that the post was erected too near the track, the evidence establishes, almost to a certainty, if not absolutely, that this fact must have been known to the deceased. He passed over the road almost daily for a considerable period of time; the post was near a bridge; and, in view of all the evidence, it was almost impossible to conceive that he was ignorant of the existence of the post, or unaware of the distance it stood from the track. I do not think these facts are similar to the ones in the case we are now considering. The Head Case was that of an engineer whose special duty it was to look out for, and take cognizance of, all obstructions in and near the track; and I think that a tell-tale contrivance, located near a bridge, is an object which would much more reasonably and naturally be called to the attention of an employé than a station-limit board. However this may be, I hold, as matter of law, that a fireman, whose duties are to look after the coal and steaming of his engine, is not bound to observe the distance of every object on the line of railway. Intervener's duties had no relation to the roadbed and track, and I do not think an employé is bound to take knowledge of defects necessarily observed in the performance of his duty. I do not think that a fireman traveling on a train, whose attention is fixed and directed

to the discharge of his duties in connection with the running of the train, is bound to observe the distance of stationary objects from the track, or the fact of his passing objects along the track furnishes such opportunity for observation as would bring the case within the reasonable application of the rule of law. Intervener swears that he had, in a general way, observed these station-limit boards, and this station-limit board, but he had no knowledge of its nearness to the track. I think he had the right to assume that his employer would have such an object at a reasonably safe distance from the track.

I therefore conclude, from the evidence in this case: (1) That the intervener was knocked from said engine by the station-limit board. (2) I find from the evidence that said station-limit board was located too near the track. (3) I find, as a matter of law, that the intervener was not in any manner guilty of contributory negligence in connection with the accident. (4) I find, on application of the law to the facts, that the defendants are liable to the intervener for the injuries sustained by him as the result of said accident. The amount of such damages, of course, depends altogether upon the extent of intervener's injuries. He contends that he was very severely and permanently injured, and the description of his condition, given by himself and by his counsel, is distressing in the extreme. The evidence, however, satisfies my mind that the intervener and his counsel very greatly exaggerate the extent of the injuries received as the result of said accident. His own physicians testify that the immediate result of the accident, besides physical disfigurement, was compression of the brain, and a partial concussion of the spine, and that these injuries produced very serious functional derangement and disturbance; but they testify that such injuries will not be permanent, and that in their opinion the intervener will be entirely restored to his normal health at the end of this year. He was injured on the 4th of June, 1894, and, at the date of the trial of the case before me, he appeared to be in good physical condition. This condition was made more clearly manifest by his conduct and action at the place where the accident occurred when the experiment was made above referred to. I think the apparent physical condition and strength, and the conduct of the party before the master, as both court and jury, are legitimate matters for consideration. In my opinion, it is a fair deduction from the evidence that the intervener was incapacitated to earn money, as a result of his injuries, for a period of six months. He was earning, at the time of his injuries, from sixty dollars to seventy-five dollars per month. Taking the average of sixty-five dollars per month, it would make his actual damages on account of lost capacity for earning a living at three hundred and ninety dollars. I think he should also be allowed fifty dollars for medical bill, and, for his pain and suffering, the sum of four hundred dollars. This would make his total damages amount to the sum of eight hundred and forty (840) dollars, and I so report in his favor. I further report that this amount should be paid by the receivers out of the fund in their hands arising from the sale of the property, and that it ranks as receivers' expenses.

The evidence and minutes of the proceedings had before me are filed with this report, under my approval.

Respectfully submitted,                     Benj. H. Hill, Special Master.
This July 27, 1895.

It will be perceived, from the foregoing report of the special master, that three questions are necessary for determination, and were determined by him, in disposing of the case: (1) Was the intervener knocked from the engine by the station-limit board? (2) Was the board located too near the track? (3) Was the intervener guilty of contributory negligence?

The first two questions were purely and simply questions of fact. It may be stated that there was fair room for argument on both sides of the two questions. From the facts adduced in evidence, there was room for doubt as to whether the accident occurred as

claimed by intervener.    At the same time, there was sufficient evidence to justify the conclusion reached by the special master in favor of the intervener's contention.    Conceding the conclusions of the special master as to the first proposition to be correct, it seems to follow necessarily that his conclusion that the station-limit board was too near the track is also correct.    If an employé, in the proper discharge of a duty which was required of him, was liable to be struck by the board, it certainly was a dangerous structure.    While I am less satisfied about this than any other proposition in the case, it can hardly be said that error on the part of the master is sufficiently clear to justify me in setting aside his report on this ground. While it is true that the intervener, when struck by this board, must have been in a position that an employé of the road would rarely assume, yet it seems that this position of leaning out, as he was, is one that may be required of employés; and it does not seem unfair to say that, in erecting these structures, it should be anticipated.

The third question presented for the determination of the special master is somewhat a mixed question of law and fact,—that is, in the first place, did the intervener really know of the existence and location of the station-limit board, as a matter of fact? and, in the next place, how far the law will charge him with knowledge, on the ground of ample opportunity to know the location of the board.    I see no reason for differing with the special master in his position on this question, or with the reasons he gives for his decision.    While the fireman might have a general knowledge of the condition of structures of this sort along the tracks of the railroad on which he is employed, he could hardly be said to have such exact knowledge on the subject as would make the act he did by the direction of the engineer a negligent act.    He seems to have been performing in a reasonably proper way the duties required of him by his superior, and if, while in the performance of this duty, he was injured, as found by the special master, by reason of the dangerous location of the structure near the track, he is entitled to recover. The evidence is, in my opinion, sufficient to justify the report.    Consequently the exceptions will be overruled, and the report confirmed.