WOLF *v.* EAST TENN., VA. & GA. RAILWAY CO.

1. The evidence showing clearly that one of the plaintiffs, an employee, was not free from fault, and there being no evidence that the structure which caused the injury was located so as to be dangerous to employees when engaged in the line of their duties, the nonsuit as to him was properly granted. *Railroad* v. *Webb,* 61 *Ga.* 586.
2. For the same reasons, the nonsuit was properly granted as to the action in favor of the employee's father, his implied consent to the employment of his minor son by the railroad company being fairly deducible from the facts in evidence, and there being no proper foundation for an inference to the contrary.
3. The error, if any, in admitting or excluding evidence, had no effect on the controlling elements of the controversy.

December 28, 1891.                    *Judgment affirmed.*

Negligence. Master and servant. Parent and child. Railroads. Nonsuit. Before Judge MILNER. Gordon superior court. February term, 1891.

W. D. Wolf, a minor, by his father as next friend, sued the railway company for damages from personal injuries, and the father sued for loss of services, etc. of his son. The cases were heard together. After the introduction of evidence for the plaintiffs, the court granted a nonsuit, to which grant, and to the rejection and admission of certain testimony hereafter mentioned, the plaintiffs excepted.

The testimony of W. D. Wolf was to the following effect: He was front brakeman on the south-bound train of defendant which stopped at Sugar Valley, a station on defendant's road, after dark in December, 1889. He got down, went back towards the caboose on the west side of the track and met the conductor, who told him to cross over and come down on the other side and look for hot boxes, which he did. He then went to a store at the station, about sixty feet from the track, on his own business, and while there the engineer rang the bell, and he went out and caught the

first car when he got to the train. His place was on the engine or on top of the train when it was in motion. Just as he walked up, he saw two men between the cars. There was a "stirrup" and one catch on the side of the car, and then the ladder went up on the end between the cars. He put his foot in the stirrup on the lower edge of the side of the car, and felt something strike his leg and hip ; and that was all he remembered until he regained consciousness after being badly injured. He did not know what struck him. The first thing he remembered after falling was seeing his lantern under the cars and the cars running over him. He did not feel the car strike him. He did feel when he got hurt. In addition to being struck on the leg and hip and having his arm run over, he was hurt also in the small of his back. He supposed he was hurt by a mail crane or "grab." He had been working on the road for some time, had run on the train by this station and had been at this station before, but never saw this mail grab there before he was hurt. He knew nothing of this mail crane; no one notified him of it or other obstructions, or warned him of the dangers of the road. His father did not consent to his employment on the railroad, but knew of it and did not forbid it. When he got to the train he supposes it was moving about two miles an hour, and the mail crane was about twenty-four feet from the crossing where he got on. When he came against something it struck him pretty heavy. The box and steps of this crane are about eighteen inches from the "clear of the car," but some are wider than others. The "grab" is a box about three feet square filled with rock, and the steps come out even with the edge of the box, the box and steps being about four feet five inches high. Thinks it was the top part or step that struck him; the box could not have struck him while he was on the car. There were no bruises where it struck him. He had

seen some mail cranes but did not know they had them all along the road; knew they had them at stations except where they had to make stops; had seen some of them frequently and knew they were near the track, but did not know they had to be put that close; knew they had to be close enough for a man to grab the sack. When he went along the east side of the train looking for hot boxes, he must have passed this mail crane, but did not see or notice it. Of course, in getting on the running train his body would be "swung out like"; he was not straight; was "sorter humped out like," but did not know how far. Passenger-trains stopped there to get orders; sometimes they ran by. He supposed they took off and put on the mail there, but did not know. The company had rules and time-cards but he never saw them to amount to anything, except as to signals, and was never furnished a copy of the rules. His lantern was burning when he was looking for the hot boxes, and there was a little bank at the mail crane on the inside of which, between it and the cars, he would have to walk to examine the boxes, but he did not know which side of it he passed. A man could walk between the crane and a car, walking by the side of the car. He knew Sugar Valley was a mail station and supposed trains took off and put on mail there, but did not know how fast. If he knew passenger-trains ran by without stopping, he knew they were obliged to have mail grabs. He was asked, "If it entered your mind to think about it you would have known it was there, but it just did not enter your mind?" He answered, "Of course I did not think about it, or I would not have let the thing strike me." Plaintiff's counsel asked this witness if it was dangerous for him to ascend the car under the circumstances and at the speed it was going, and if it appeared dangerous to him, and if he had not often previously ascended with safety cars moving as this was; to each of which questions the defendant objected, and

the objections were sustained, the court holding that the witness must state facts and not matters of opinion.

From the testimony of two other witnesses it appeared : The steps were knocked off the mail crane about the time of the injury; they were off the next morning. There are five or six cranes at stations between Dalton and Rome, Sugar Valley being one of the stations. The proper distance of the crane from the track is three feet nine inches from the outside of the rail. The space between the box and steps and an ordinary freight-car is about twenty-two inches; an ordinary size man could walk between without any trouble. Both witnesses had seen persons swing on the ladders on the outside of the cars and pass this crane without being struck, and neither had heard of any one but plaintiff being hurt by a mail crane. The crane or box is on two cross-ties, and a man must step over the ties, either between the box and cars or between the box and bank, in order to look for hot boxes, and there is a ditch about four and a half feet deep over which cross-ties extend. One of the witnesses thought a man with two good eyes and a lantern could not pass there without seeing the mail crane, the top of the bank was too far off to look for boxes; and the other, that a man would have some little trouble in passing around that mail crane because of the embankment, but could go between a crane and a car; and further stated that you have to notice the ties on which the crane stands as you go over them, and he did not see how any one could pass without seeing the crane. These witnesses were asked, on cross-examination, if a brakeman with his lantern could pass the crane and not see it. To this the plaintiffs objected as a matter in issue and to be determined by the jury, but the objection was overruled.

W. K. MOORE, for plaintiffs.

DORSEY, BREWSTER & HOWELL and McCUTCHEN & SHUMATE, for defendant.