HENRY C. ROUSE, *as Receiver de bonis non of the Missouri, Kansas & Texas Railway Company*, v. W. G. LEDBETTER.

No. 8013.

1. RAILROAD EMPLOYEE, *Injured — Unnecessary Allegation.* In an action brought by a yard switchman against the receivers of a railway company to recover damages for personal injuries sustained in their service while attempting to make a coupling, by reason of slipping on an incline negligently constructed and maintained by the receivers, adjoining a new track, as part of a street sidewalk in a city, it was unnecessary for the plaintiff to allege the violation of any ordinance in the construction and maintenance of such incline.

2. CONTRIBUTORY NEGLIGENCE—*Inconclusive Evidence.* That a yard switchman has failed to notice a small incline forming a connection between an outside track and a sidewalk, and which he might have often seen if his attention had been directed to it, is not conclusive evidence of contributory negligence on his part, or a waiver of negligence of the master, in an action brought by the yard switchman against the master to recover damages for personal injuries sustained by reason of slipping on such incline, the same being covered with snow.

*Error from Labette District Court.*

AT May term, 1891, the defendant in error recovered a judgment against the receivers of The Missouri, Kansas & Texas Railway Company for $4,500 on account of personal injuries sustained in the yards at Parsons on January 8, 1891, resulting in the loss of his left hand, which was amputated above the wrist joint. He was on that day engaged as a helper, following a switch-engine at work at and near Johnson avenue. While attempting to make a coupling between a standing box car on the north side of said avenue and a moving one which he had been riding, and from which he alighted at or near the sidewalk, he slipped on an incline forming the connection between the east rail and the end of the sidewalk, and in struggling to

avoid being run over by the moving car, he threw up his left hand which was caught between the draw-heads of the standing and the moving car. The surface of the ground, the sidewalk and the incline were covered by a recent fall of snow, which was melting, and this made the incline slippery. The only negligence charged against the receivers is that this incline, as constructed and maintained by them, was dangerous to the yardmen in making couplings or doing other work upon the ground at that point, and that the plaintiff below was unaware of its existence at and before the time of sustaining said injury. Johnson avenue at that point crossed a tract known as the "Railroad Reserve," owned by the company, and several tracks crossed the avenue. In 1887, while the Missouri, Kansas & Texas railway was being operated under a lease by the Missouri Pacific Railway Company, the latter company was by ordinance required to construct a wood sidewalk of the third class along the north side of Johnson avenue across the railroad reserve, the ordinance containing no direction as to the grade of the sidewalk, nor how it should be constructed, except as above stated. The sidewalk was put down, and it remained there until the summer of 1890, when the receivers put in a side-track principally for the accommodation of a new elevator owned by Steele & Busby. In order to do this, the receivers took up part of the sidewalk and laid the new track upon a somewhat lower level. This side-track did not cross the sidewalk at right angles, but the old sidewalk was so cut off at a distance from the east rail about 30 inches on the north side, and 18 inches on the south side of the sidewalk. The top of the rail was about six inches lower than the top of the sidewalk, and boards were placed across the

end of the sidewalk and alongside of the rail, the top of the plank being an inch or two lower than the top of the rail. This connection between the end of the walk and the east rail is the incline upon which Ledbetter slipped and fell. It does not appear that the receivers made any application to the mayor and council for leave to take up this sidewalk, and there is some conflict in the testimony as to whether or not the work was done under the direction and to the approval of the street commissioner; but the jury found that it was not, and the evidence shows that the work was done and the incline put in by the servants of the receivers, and it does not show that any grade had ever been established by the city. Some other facts appear in the opinion, filed January 11, 1896.

*T. N. Sedgwick*, for plaintiff in error.

*W. D. Atkinson*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J.: I. It is alleged in the petition, among other things, in substance that the sidewalk on the north side of Johnson avenue was constructed and maintained as required by an ordinance of the city, and it is contended by the plaintiff in error that the manner of making the connection from the level of the sidewalk to the level of the new track is presumed to have been conformable to the requirements of the city ordinance, and there is no allegation that the receivers had in any manner ignored any such ordinance, and therefore the petition was insufficient to state a cause of action. It was alleged, however, that the defendants below " wrongfully and negligently made an abrupt connection between the said two levels by inclining boards at an angle of about

30 degrees . . . from the level of said sidewalk to the upper surface of the east rail of said newly-constructed track,'' and no presumption obtains that the city had established any grade, nor that it exercised any supervision over the construction of the new side-track, nor in making the connection between it and the end of the old sidewalk. It was unnecessary for the plaintiff below to allege the violation of any city ordinance in adjusting the connection between the new side-track and the old sidewalk.

II. It appears that Ledbetter had been working in the yards about a year, but nearly all the time in the west yards, and remote from Johnson avenue; yet he worked in the east yards for 8 or 10 days next prior to his injury, though most of the time he was doing field-work, and not following the engine. It was in evidence, however, that he had crossed Johnson avenue many times during those days, either upon the footboard of the engine, on cars, or afoot; but he testified, and the jury found, that he never noticed this incline connecting the Steele & Busby switch with the end of the old sidewalk. He further testified, that he had never made any coupling or performed any work at that particular place. The plaintiff in error contends, however, that he was bound to take notice of it, and cannot be heard to say that he did not, and that the case comes within *Rush v. Mo. Pac. Rly. Co.*, 36 Kan. 129, and others of like import. In the Rush case, however, the yardman got his foot caught between a main rail and the guard rail, and was run over and killed, and the negligence charged against the company was in failing to block between the rails; but there were about 20 such places in the yards, and none of them were blocked, and it was held that the yardman must have had knowledge

of the want of blocking, and that he waived any neg-
ligence that might otherwise be imputable to the rail-
way company on that account.    In the present case
there was no such apparent danger.    The incline was
east of all the tracks, and extended along the east rail
of the new track only the width of the sidewalk; and
while the jury found that, by the reasonable use of his
eyesight, Ledbetter might have seen it while crossing
Johnson avenue, yet they say it was not plainly visi-
ble from all the tracks there.    Besides, it should be
remembered that it was covered to a considerable
depth with snow at the time of the casualty, and that,
if he had known of the incline being at or about the
place where he alighted from the car, he might not have
noticed that he was stepping onto it.    We do not think
that the failure of Ledbetter to notice this incline
during the several days that he might have seen it,
had his attention been called to it, nor the fact that
he stepped upon it to make the coupling, is conclusive
evidence of contributory negligence on his part, nor
that he waived the risks attendant upon stepping
thereon for the purpose of making the coupling.    The
faculty of close observation of objects is largely a gift.
Some persons may walk once along a street and be
able, without any special effort, to describe every
prominent object upon and every projection into the
street, while others might go up and down the same
street for a year, who could not describe such objects
and projections.    If Ledbetter had ever walked upon
this incline, doubtless he would have noticed it; but
we cannot judicially say that his failure to observe
it as he crossed Johnson avenue from time to time in
doing his work was conclusive evidence of negligence
on his part which ought to preclude a recovery for
injuries sustained by reason of the negligence of the

receivers. The master is in duty bound to provide a reasonably safe place for his servant to work. Many dangers necessarily attend the performances of the duties of a yard switchman, but the master is not allowed to increase the hazards of his servant by placing pitfalls, obstructions, traps or inclines in his path, whereby he may lose his footing and be mangled or killed ; and in such case, where there is no contributory negligence on the part of the servant, and his conduct has not been such that the court or jury must say that he has waived the negligence and assumed the risks, a recovery may be had on account of an injury resulting therefrom. (*K. C. Ft. S. & G. Rld. Co. v. Kier*, 41 Kan. 661.)

No complaint is made because of instructions given or refused, nor on account of the admission or rejection of testimony, and, finding no material error in the case, the judgment must be affirmed.

All the Justices concurring.