THE SOUTHERN KANSAS RAILWAY COMPANY v. O. P. MICHAELS.

No. 9035.

1. NEGLIGENCE — *maintaining switch-projection so close to track as to knock trainman from cars, is.* The placing and maintenance of a switch-stand on the top of which there is an arrow or spear 17 inches long and which, when turned toward the track, is so close as to knock trainmen from the ladder on the side of the cars when engaged in the performance of their duties, is negligence on the part of the Railroad Company; and under the circumstances of this case warranted the submission to the jury of the question whether or not it was a case of gross negligence.

2. ———— *contributory, not presumed from knowledge of existence of switch without knowledge of dangerous character.* While a trainman ordinarily cannot recover for injuries arising from perils that are obvious, yet the mere fact that the switchman had seen and handled the switch does not necessarily show that he had such information as would charge him with knowledge of the dangerous proximity of the same when the spear on the top of the switch was turned toward the track, and is not conclusive evidence of contributory negligence.

3. PHYSICAL EXAMINATION — *application for, should be made reasonable time before trial.* The court may, in the exercise of a sound judicial discretion, require a plaintiff seeking to recover for personal injuries to submit to a physical examination ; but where the application is not made until after the close of plaintiff's evidence, and no reason is shown for the delay in making the application, nor any showing made as to the necessity for such an examination, it will not be error to refuse the application.

4. TESTIMONY OF WITNESS — *greater part proper, overruling motion to strike out all, not error.* The refusal of a motion to require the court to strike out all the testimony of a witness, the greater part of which is unobjectionable, cannot be regarded as error.

5. ERROR CURED — *by findings showing instruction immaterial.* An error in the instructions which the findings of the jury show to be immaterial, is not ground for reversal.

6. NEGLIGENCE — *testimony held to sustain findings as to.* The testimony examined, and *held* to be sufficient to sustain the findings and verdict.

*Error from  Sumner  District  Court.*
*Hon. L. Nebeker, Judge pro tem.*

Affirmed.                    Opinion Filed December 5, 1896.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*James A. Ray,* and *J. E. Halsell,* for defendant in error.

Johnston, J.   O. P. Michaels brought this action against the Southern Kansas Railway Company to recover for personal injuries received while acting as head-brakeman on a freight train running from Cherry Vale to Wellington.   The distance between the points was more than 100 miles, and Longton was among the stations on the route.   A branch road connected with the line at that point, and there were a number of sidetracks and switches in the yards.   Michaels was an experienced brakeman.   He was employed by the Company in that capacity in October, 1885, and continued in its service until May, 1886.   He re-entered the employment of the Company in February, 1887, and was employed on the run mentioned until April 7, 1887.   While engaged in switching in the Longton yards on that day he was hanging to the ladder on the side of a car, with his foot in the stirrup; and while signaling to the rear brakeman was struck on the back, knocked down, and severely injured by a switch-target, which is alleged to have been too close to the track.   The switch-stand was midway between two tracks, and the center of the same was only 4 feet and 3 inches from the inside rail of either track.   It was about 7 feet high, and on top there projected about 17 inches from the staff a spear or arrow-head used to

indicate the direction in which the switch was turned. The cars of the Company projected about 25 inches over the rail, and when the 17-inch spear was turned it would leave a space of about 9 inches between the switch-target and the side of the car. It is customary and proper for the brakeman to hold to the ladder on the side of the car while switching about the yards; and at the time of the injury Michaels was engaged in the performance of his duty, and was giving directions to the rear brakeman with reference to a switch on another track which required adjustment. The train was moving west, while the brakeman with whom Michaels was communicating was east of him; and therefore his back was toward the switch-stand the target of which knocked him off. He was familiar with the yards, and had previously used the switch-stand; but he states that he had never observed that it was so close to the track as to make it dangerous for those who were upon the side of cars passing over the track.

There have been two trials of the case, and in each Michaels has been successful in obtaining a verdict. The first judgment was reversed on account of error committed in the admission of testimony, and because the findings of the jury were unsupported by the testimony and inconsistent with each other. *S. K. Rly. Co. v. Michaels*, 49 Kan. 388. In the second trial he recovered a judgment for $6,860; and the Company brings the case here again, insisting that prejudicial errors were committed in the course of the trial.

We are not favorably impressed with the contention that the testimony is insufficient to support the verdict and judgment. The maintenance of a switch-stand so near the track as to knock from the cars trainmen regularly engaged in the performance of

Opinion of the Court.

their duties, was a plain case of negligence ; and one, too, which warranted the Court in submitting to the jury the question whether or not it was gross negligence. Michaels was using the ladder in the ordinary way and for a proper purpose. He was pursuing the usual course when he gave signals or directions to the rear brakeman to proceed and adjust another switch. For the time being his whole attention was engaged ; and his duty required him to look toward the rear of the train instead of in the direction in which it was moving and where the target was. If he had been looking ahead, he would probably have observed that the switch-target was so close to the car as to be dangerous ; but his duties appeared to require him to look in a different direction in order to accomplish his work in a proper manner.

1. Negligence in maintaining dangerous switch.

It is contended that the plaintiff was aware of the location of the switch-stand and did not exercise due care for his own safety. His own statement, however, is, that while he had run through the yards many times and had previously handled the switch, he had never noticed how close the switch-target came to the passing cars when it was turned toward them. It is easy to understand how he might pass and repass the switch, when the 17-inch spear was not turned toward the cars, without observing that it would be dangerously close when turned toward them ; and also that while upon the ground setting the switch he might fail to observe how near the spear was to the passing cars. In *Rouse v. Ledbetter*, 56 Kan. 348, an injury to a switchman resulted from a defective structure in the yard, and one that he might have seen by the reasonable use of his eyesight. It was held, how-

2. Contributory negligence not presumed, when.

ever, that the fact that he was working in that part of the yard and might have seen it if his attention had been called to it, was not conclusive evidence of contributory negligence.    It was said :

"The faculty of close observation of objects is largely a gift.    Some persons may walk once along a street and be able, without any special effort, to describe every prominent object upon and every projection into the street, while others might go up and down the same street for a year, who could not describe such objects and projections. . . . Many dangers necessarily attend the performance of the duties of a yard switchman, but the master is not allowed to increase the hazards of his servant by placing pitfalls, obstructions, traps or inclines in his path, whereby he may lose his footing and be mangled or killed."

Testimony was introduced that Michaels knew of the dangerous proximity of the switch to the track, and it appears that he had heard some one say a short time before that one of the switches at Longton was dangerous ; but he positively asserted that he had never observed that the switch which swept him from the car was so close to the track, and that he had no knowledge of its dangerous proximity. The mere fact that he had seen and handled the switch does not necessarily show that he had such information as would charge him with knowledge of the distance between the target on the top of the switch and the ladder on the side of the car.    The switch-stand had been there from the time he was reemployed by the Company — a period of about 55 days ; but his work was not confined to that yard. On his trip between Cherry Vale and Wellington he passed through many stations and yards, and necessarily had to do with numerous switches.    He may be said to have assumed the general danger from

structures and erections near the tracks; but it does not appear that there were any others dangerously near the tracks; and from his testimony and the finding of the jury we must assume that he had no actual knowledge of this danger. It was not to be expected that he would observe or keep in mind the relation of all these switch-stands to the tracks, their distance and danger. In reason there can be no necessity for maintaining switch-stands so close to the tracks as to make it unsafe for trainmen to perform the duties required of them; and, in the absence of notice of the danger, they have the right to assume that the company will make adequate provision that no danger, other than the dangers naturally incident to the business, shall befall them while in the performance of their duties. In a somewhat similar case, where an employe was knocked from a train by the overhead timbers of a bridge, it was said:

" When he entered the service of the company he assumed the ordinary risks incident to the service; and if he enters or continues in the service with a knowledge of the risk or danger, and without objection, he must abide the consequences.  .  .  .  The law, however, does not require that an employee shall know of all defects or obstructions that may exist on the road or in the service in which he is engaged." *St. L. Ft. S. & W. Rld. Co. v. Irwin*, 37 Kan. 701. See, also, *A. T. & S. F. Rld. Co. v. Rowan*, 55 Kan. 270.

In the present case the danger was not so obvious that it can be said as a matter of law that Michaels was bound to know and appreciate it. Although he did know of the existence of the switch, he may not have had such knowledge of its dangerous character as would charge him with the assumption of all risk arising from it. That was fairly a question for the

jury, and it has been decided in favor of the defendant, in error.

Error is assigned on the refusal of an application to require Michaels to submit himself to a medical examination. The application was not made until the trial had commenced and after the plaintiff had closed his testimony. The Company then applied to have the plaintiff submit to an examination by a sin-

3. When applica- gle physician, who was named. No
tion for physical reason was given for the examination
examination
should be made. nor any showing made of necessity for the same. It has been held that the power to compel the physical examination of one seeking to recover for personal injuries exists in proper cases. *A. T. & S. F. Rld. Co. v. Thul*, 29 Kan. 466. As it trenches closely upon an invasion of the private rights of the person, it should be exercised with great caution and only where it is necessary to effect the ends of justice. In the Thul case it was said that upon such application the court should exercise a sound judicial discretion, and the order for the examination should be made upon a proper application and upon a proper showing. When such an examination is necessary, a timely application should be made ; and it should be conducted under the control and direction of the court, by competent physicians or surgeons selected by the court. There was no showing made that an examination was essential to a full understanding of the injuries, nor was the application made in proper time. If an examination was required, the application should have been made a sufficient time before the trial commenced, in order that it might have been deliberately and carefully made, and without interfering with the progress of the trial.

There are several objections to the testimony, and

especially to that given by Dr. Forbes, who had examined the plaintiff below and who testified concerning the permanency of the injury. At the time he made the examination the history of the case was given to him by Michaels, and he also had the written statements of Doctors Spitler and Hamilton, who had formerly examined Michaels. At the end of his testimony the Company requested the Court to withdraw from the consideration of the jury all the testimony of the witness as to the condition of Michaels and the character of the injury. Most of the testimony given by the witness was free from objection, and was based upon the personal examination which he had made. Of course statements of the result of examinations made by other physicians could not legally be introduced in evidence. It was proper that he should be informed, however, of the injury and the time of its infliction, and, generally, of the history of the case ; and this appears to have been the only use that was made by him of the statements of the other physicians. However, he appears to have been a competent physician and surgeon, and as nearly all of his testimony rested upon a personal examination, and was, therefore, unobjectionable, the motion to strike out the whole of his testimony was properly overruled.

4. Overruling motion to strike out testimony not error, when.

We have examined the instructions refused and given, and find no cause for reversal. Most of the controlling principles of law in the instructions requested were embodied in the charge that was given ; and what has already been said as to the merits of the case disposes of several objections to the instructions. One of the instructions given may have been somewhat inaccurate in stating that a recovery might

be had by the plaintiff even though he was not free from negligence, if the Company was guilty of gross negligence ; and in a certain sense the negligence of the two was compared. If there was error in this respect, however, it must be regarded as harmless ; as the jury, in answer to a special question, found that the plaintiff was in the exercise of ordinary care, and, in answer to another, that he was not guilty of any negligence.

In our view there is testimony to sustain the material findings in the case, and they support the verdict which was rendered. We have carefully examined all the questions discussed by counsel, some of which it is not deemed necessary to mention, and find that the record presents no prejudicial error.

The judgment of the District Court will, therefore be affirmed.

All the Justices concurring.