# CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* HAAS, ADMINISTRATOR.

[No. 5,180.    Filed June 8, 1905.]

1. PLEADING.—*Complaint.—Railroads.—Negligence.—Bridges.*—A complaint, by the administrator of the head brakeman of a freight-train against the company for negligence in maintaining a bridge, which alleges that such brakeman was leaning out between the engine and tender, watching a hot journal on one of the cars, as directed by the rules, when he was struck by such bridge and instantly killed; that he did not know such bridge was more than ordinarily dangerous; that such bridge was too narrow for the use of the large engines which were in use, and that defendant knew of this, but did not inform decedent, who was ignorant thereof, states a cause of action. p. 627.

2. RAILROADS.—*Bridges.—Negligence in Maintenance.—Question for Court.*—The courts will declare as a matter of law that the maintenance of a railroad bridge fourteen feet and one inch wide in the clear does not constitute negligence on the ground that such bridge is insufficient in width. p. 630.

3. NEGLIGENCE.—*Railroads.—Ordinary Care.—Anticipation of Possible Accidents.*—A railroad company is not compelled to anticipate all possible injuries, but only such as are likely to happen in the usual and orderly conduct of the road. p. 635.

4. RAILROADS.—*Negligence.—Bridges.—Warning.*—A railroad company is not guilty of negligence for failing to notify its brakeman of the dangers of a bridge of standard width along its line of road. p. 636.

5. TRIAL.—*Negligence.*—*Evidence.*—*When Question of Law.*—Where there is no conflict in the evidence in a negligence case, and but one reasonable inference can be drawn from such evidence, a question of law only is presented. p. 636.

From Marion Circuit Court (11,446); *Henry Clay Allen,* Judge.

Action by. Schuyler A. Haas, as administrator of the estate of Thomas O'Brien, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Elliott, Elliott & Littleton* and *John T. Dye,* for appellant.

*Henry N. Spaan, S. P. Welman* and *Elias D. Salsbury,* for appellee.

COMSTOCK, J.—This action was brought by plaintiff, appellee, against defendant, appellant, to recover damages for the death of the plaintiff's intestate on account of the alleged negligence of the defendant in maintaining a bridge claimed to have been too narrow. The plaintiff's intestate was a freight brakeman in the service of the defendant, and the action is based on the alleged common-law liability of the master to his servant. The case went to the jury upon the issue formed by the seventh paragraph of complaint (the other paragraphs having been withdrawn), and answer thereto of general denial. A verdict for $3,000 was returned in favor of plaintiff, and judgment rendered thereon.

1. The first specification of error challenges the sufficiency of the complaint. Most of the other alleged errors come under the assignment of error upon the motion for a new trial, and the court's action thereon. The paragraph under consideration alleges that on the 14th day of July, 1901, and for many years prior thereto, said defendant was a railroad corporation owning and operating among other lines of railway one lying between the cities of Peoria, Illi-

nois, and Indianapolis, Indiana; that for many years last past said corporation had operated said line of railway, and especially that portion lying west and east of a certain bridge built over Eagle creek, near the city of Indianapolis; that said bridge was built more than twenty years ago, and at a time when there were in use upon said line of railway small engines; that within the past five years the defendant had been operating over and along said line of railway, and over said bridge, engines much larger in size—as to weight, height and width—than the engines that were used at the time said bridge was built and sometime thereafter; that the use of said large engines over said line of railway makes it more than ordinarily dangerous for trainmen on freight-trains to handle trains running across said bridge, in this, viz.: that said engines, being much wider than the engines for the use of which said bridge was built, makes the space between the engines and the uprights supporting said bridge much smaller, thereby endangering the lives of trainmen whose duties call them to the side of said trains while they are in operation across said bridge; all of which facts were known to the defendant for more than five years before the 14th day of July, 1901, yet it failed to give any warning by any method whatever of said danger to its employes running trains over said bridge; that about three months prior to July 14, 1901, Thomas O'Brien went into the employ of the defendant as a brakeman on freight-trains running on the line of railway above described; that about 3 o'clock on the afternoon of said day he was acting as the head brakeman on a freight-train running east and west over said line of railway; that sometime before said train arrived at the bridge one of the journals on one of the freight-cars became heated, so as to make it necessary for said O'Brien to watch said journal, and not allow it to become overheated; that the effect of allowing a journal to become overheated is to put the train in danger of leaving the track, because of the fact that said journal may become crooked

and swell and break down, thereby endangering the safety
of defendant's property; that it was the duty of said
O'Brien to watch said journal carefully and prevent it from
overheating; that the only way he could do that while said
train was in motion was to watch said journal from time to
time, and, in order to keep a proper watch upon said jour-
nal, he placed himself upon the gangway of the engine situ-
ated between the engine and tender, and from time to time
he leaned out, as it was his duty to do, beyond the line of
said engine, and looked back to see what was the then condi-
tion of said journal; that when said train approached the
bridge it was running at the rate of forty miles an hour, and
had about two and one-half miles to run before it reached
Mooresfield, its next stopping place, and where the repair
shops of the defendant were then located; that just before
they reached the bridge O'Brien was watching the journal
from the gangway before described, and he, being then and
there intent upon his duty of watching the overheated
journal, was not aware of the near approach to the bridge,
nor did he know at that time that said bridge was more than
ordinarily dangerous because of the narrowness compared
with the size of the engine upon which he was riding, as
before described; that being so ignorant, and having his
mind intent upon the duty of watching said journal, he
leaned out over the side of said engine in the course of his
duty of watching said journal, and while so doing his head
and body came in contact with the side of said bridge, and
he was instantly killed; that O'Brien was killed because
of the negligence of the defendant in maintaining said
bridge in the dangerous condition before described, that is,
too narrow for the running thereover of engines as large as
the one upon which said O'Brien was, said engine being
one of the large engines that have come into use upon the
road within the last five years; and that the defendant was
negligent in not notifying O'Brien of the more than ordi-
narily dangerous condition of the bridge described, either

by word of mouth or by putting up the proper signal or otherwise; that O'Brien did not know the dangerous condition of said bridge, and did not know that it was too narrow; that the defendant did know all of these facts, and had known them for more than five years before the killing of O'Brien.

The first point made by the defendant is that the court erred in overruling its demurrer for want of facts to the seventh paragraph of the complaint. The second, that there was no negligence of the defendant shown to have been the proximate cause of decedent's death. Notwithstanding the able argument made against it, we are of the opinion that the complaint is sufficient to withstand a demurrer.

2. Of the questions growing out of the numerous remaining alleged errors, we deem it necessary only to decide whether appellant was guilty of negligence. In doing this a consideration of the following undisputed facts is required: The bridge in question was fourteen feet one inch wide in the clear. The standard width is fourteen feet. The bridge in question was one inch wider than the standard width of bridges on defendant's road, and on other roads generally. There was a space of at least two feet and two inches between the end of the pilot beam, which was wider than any other part of the engine or train, and the nearest portion of the bridge on either side. There was a space of at least two feet and five inches between the outermost edge of the gangway, where it is claimed the appellee's intestate was, and the nearest part of the bridge. Engines of the same size as that in question, and even larger, had been used on the road and run over the bridge in question for at least eight years before the accident, and, so far as appears, no such accident had happened before at the bridge. Plaintiff's intestate had made the same run, going or coming, almost every day for nearly three months. The injury was received in broad daylight, early in the afternoon. Plain-

tiff's intestate at the time he was injured was standing in the gangway of the engine, leaning out on the north side, and looking back toward the rear of the train. No one gave plaintiff's intestate any orders or directions to lean out of the engine. The complaint does not allege that he was directed by any one to stand where he stood, or lean out of the engine. He was knocked off about the midde of the bridge. He had passed one upright before reaching the one by which he was injured. It also appears that the hot box was back of the middle of the train, and one of plaintiff's witnesses, who was the only witness who testified as to the duty of a head brakeman as distinguished from that of the rear brakeman, testified that if the hot box is near the head or front end of the train the head brakeman looks after it, but if it is near the rear end, the rear brakeman looks after it from the rear end of the train. If defendant was guilty of negligence in maintaining the bridge, it was because of its insufficient width. The question therefore is, what should have been the width of such a structure? Naturally its width should have reference to the use for which it was intended.

In *Illick* v. *Flint, etc., R. Co.* (1888), 67 Mich. 632, 35 N. W. 708, it is shown that the standard width is fourteen feet, and the bridge in question was only thirteen feet and four inches wide, yet it was held that the company was not negligent in so maintaining it. In the opinion the negligence of the plaintiff's intestate is held by Sherwood and Champlain, JJ., to preclude a recovery, Morse, J., reserving his opinion; but all concur in holding that the negligence of the defendant was not shown by the evidence.

In *Sheeler's Administrator* v. *Chesapeake, etc., R. Co.* (1885), 81 Va. 188, 59 Am. Rep. 654, the sides of the bridge were only thirteen and one-half inches from passing engines, but the court held that there was no negligence in this respect.

In *Kenny* v. *Meddaugh* (1902), 118 Fed. 209, 55 C. C.

A. 115, a mail crane was only thirteen and one-half inches from the engine, yet it was held that the company was not negligent.

In *McKee* v. *Chicago, etc., R. Co.* (1891), 83 Iowa 616, 50 N. W. 209, 13 L. R. A. 817, a wing fence was three feet and ten inches from the rail, making it about two feet from the side of the car, and it was held that the company was not negligent.

In *New York, etc., R. Co.* v. *Ostman* (1896), 146 Ind. 452, a cattle chute was only thirteen inches from the cab window, and it is intimated that the company was not negligent.

In *Wolf* v. *East Tenn., etc., R. Co.* (1891), 88 Ga. 210, 14 S. E. 199, a space between the mail crane and the car was shown to be from eighteen to twenty-two inches, yet the court held that it did not appear that this would be unreasonably dangerous to employes when properly performing their duties.

In *Sisco* v. *Lehigh, etc., R. Co.* (1895), 145 N. Y. 296, 39 N. E. 958, the mail crane by which the trainman was struck was only twelve inches from the passing train, yet the court held that the company was not negligent.

In *Bellows* v. *Pennsylvania, etc., R. Co.* (1893), 157 Pa. St. 51, 27 Atl. 685, an engineer was put on an engine six inches wider than those on which he had been running, and no warning or instructions were given him. The space between the side of the engine and the side of the bridge was only twenty inches, yet it was held that there was no negligence on the part of the company, and that he could not recover for injuries received by the contact of his head with the iron work of the bridge while he was leaning out of the cab window watching his train, although he could have safely done so on the engines that he had before used.

In *Illick* v. *Flint, etc., R. Co., supra,* the court say: "A railroad company can not be required to condemn and remove a bridge which is without fault in its plan or defect

in its structure, while it is in good repair, and safe for the passage of trains, simply because some engineer shall pronounce it not as good or convenient as some other kind. Railroad companies must be allowed to use their own discretion as to the kind of bridges they will use, and when and under what circumstances they will remove or replace them, while they are safe. Any other rule would be both unjust and oppressive. As between the employers and employed, it is unquestionably the duty of the railroad company to provide a track and equipments which shall be reasonably safe; but this does not oblige the company to make use of the latest improvements, or to change the structures upon its road so as to conform to the most recent or advanced improvements and ideas upon such subjects; neither does good railroading require any such thing."

In *Sheeler's Administrator* v. *Chesapeake, etc., R. Co.,* *supra,* the court say: "The bridge was without fault as to plan and mode of construction; was amply sufficient for, and had for many years answered all the purposes for which it was constructed. In such case this court can not undertake, in the absence of evidence, to say that the bridge was too narrow or was in any respect defective or unsuited to a well-constructed railway, or dangerous to either passengers or employes in the exercise of ordinary care and caution. To hold a railway company liable, under such circumstances, on the ground of defective construction, would be to go far beyond the limits of judicial authority, and impose liability not imposed by law. There can be no presumption of negligence in a case like this."

It is said in *Kenny* v. *Meddaugh, supra:* "There was, however, no failure upon the part of the defendants to use due care to provide the decedent a reasonably safe place to work, in this particular. Notwithstanding the proximity of the mail crane to the track, and the liability of a negligent fireman coming in contact with it when in position, it was reasonably safe. * * * In addition to this, all

other mail cranes on defendants' road, and those on the Michigan Central and Pere Marquette railroads were located at substantially the same distance from the track as the one in question.   *   *   *   It must be held, therefore, that there was no failure on defendants' part to use due care to place the mail crane in question at a reasonably safe distance from the track."

In *New York, etc., R. Co.* v. *Ostman, supra,* the court say: "It would seem that the correct standard by which the negligence of the railroad company ought to be measured, when the action is for an injury or death to one of its trainmen, arising out of its alleged negligence in erecting or maintaining a chute in too close proximity to its tracks is, that it must be, when so erected or maintained, dangerous or unsafe to persons operating its trains when they are exercising, under the particular circumstances, ordinary care." If a bridge is wide enough to clear trains and let them pass in safety the purpose of their construction would seem to be accomplished. It is not to be anticipated that employes will be at the sides of the trains, or leaning far out from them while passing through bridges.

In the case last above named the case of *Gould* v. *Chicago, etc., R. Co.* (1885), 66 Iowa 590, 24 N. W. 227, is cited, and the following quotation made from the opinion: " 'It is not true that a railroad company is to be regarded as negligent in erecting or maintaining contrivances or things for use in the operation of their roads, for the reason that they are "dangerous to the persons operating trains." Indeed, the whole business of operating trains is "dangerous." It is full of perils to those employed therein. Because there is danger, it does not follow that the companies are negligent as to the things from which the danger springs. The instruction should have expressed the thought that if the crane was dangerous to persons operating trains in the exercise of ordinary care the defendant was negligent in constructing it.' "

3. Appellant owed to the deceased ordinary care. The proper inquiry is whether, taking into consideration the circumstances as they existed at the time of the accident, the company was negligent in failing to anticipate and provide against it. *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 2 Am. St. 193; *Beatty* v. *Central Iowa R. Co.* (1882), 58 Iowa 242, 12 N. W. 332, 8 Am. and Eng. R. R. Cas. 210. Appellant was only bound to anticipate such combination of circumstances, and accidents and injuries therefrom, as, taking into account its experience and the experience and practice of other companies as relating to the conduct of its business, it might reasonably forecast as likely to happen. *Wabash, etc., R. Co.* v. *Locke, supra.* Ordinary care does not require that every possible contingency must be anticipated and guarded against, but only such as are likely to occur. It is the rule that appliances and structures should be kept in suitable repair, and be reasonably sufficient for the purpose intended. Appellee's decedent had safely passed over the bridge for months; other employes had done so for a number of years without accident. There was nothing in the observation or experience of appellants, or the history of the road, from which the accident could have been anticipated. There is no evidence that the deceased was directed to take the position that he took on the gangway, or to lean out beyond the line of the locomotive.

In *McKee* v. *Chicago, etc., R. Co., supra,* a brakeman, in order to ascertain what was wrong with the running-gear of a freight-car, descended the ladder at the side, and, while swinging out to look under, came in contact with the wing of a fence. The court held that as the accident happened at a place where the employe could not be reasonably expected to be, there was not negligence, saying: "So far as the record shows the accident in question was improbable, and it was due to causes of such rare occurrence that

the defendant, in the exercise of ordinary diligence, was not required to provide against it."

In *Bryce* v. *Chicago, etc., R. Co.* (1897), 103 Iowa 665, 72 N. W. 780, it is announced that the same rule controlled in *Koontz* v. *Chicago, etc., R. Co.* (1884), 65 Iowa 224, 21 N. W. 577, 54 Am. Rep. 5, and *Davis* v. *Columbia, etc., R. Co.* (1883), 21 S. C. 93.

It is not to be anticipated that an intelligent and ordinarily prudent man will unnecessarily expose himself to imminent or apparent danger. Against such possible conduct upon the part of the employe it is not required to provide. There is nothing in the evidence to indicate that defendant, in the construction and maintenance of the bridge, had not provided its employes a reasonably safe place for the discharge of their ordinary duties. There is an absence of testimony directed to the negligence of the company as to the decedent's leaning out beyond the locomotive. The bridge was reasonably safe for the conduct of the business of the road. Such condition does not constitute negligence.

4. But it is contended by counsel for plaintiff that the theory of the complaint is that the defendant was negligent in not notifying the deceased that the bridge was dangerous. This theory of the complaint is without support in the evidence, but, as the bridge was of standard width, an express warning was not required.

5. The evidence is undisputed, and the question of the negligence of the defendant becomes one of law, under the decisions. We are of the opinion that defendant, upon the facts, is not shown to have been negligent.

It is contended by counsel for plaintiff that, considering the evidence and the inferences that might legitimately be drawn therefrom by the jury, the evidence is amply sufficient to sustain the charge of negligence against defendant. To sustain this claim counsel cite *Central Trust Co.* v. *East Tenn., etc., R. Co.* (1895), 73 Fed. 661; *Whipple* v. *New York, etc., R. Co.* (1896), 19 R. I. 587, 35 Atl. 305, 61

Am. St. 796; *Potter* v. *Detroit, etc., R. Co.* (1899), 122
Mich. 179, 81 N. W. 80, 82 N. W. 245; *Sweet* v. *Michigan
Cent. R. Co.* (1891), 87 Mich. 559, 49 N. W. 882; *Wright*
v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583; *Southern
Kan. R. Co.* v. *Michaels* (1896), 57 Kan. 474, 46 Pac.
938; *Bryce* v. *Chicago, etc., R. Co., supra; Baltimore, etc.,
R. Co.* v. *Roberts* (1903), 161 Ind. 1; *Illinois Cent. R. Co.*
v. *Welch* (1869), 52 Ill. 183, 4 Am. Rep. 593; *Chicago,
etc., R. Co.* v. *Stevens* (1901), 189 Ill. 226, 59 N. E. 577.

In *Whipple* v. *New York, etc., R. Co., supra,* a telegraph
pole was erected by a railroad company so near its track,
and with such a slant towards the track, as to render it dan-
gerous to the company's employes in the performance of
their ordinary duties. It was held to be a defective struc-
ture, and the location and maintenance of the pole in such
a position was held to be negligence on the part of the com-
pany.

In *Sweet* v. *Michigan Cent. R. Co., supra,* it was held
that the constructing and maintaining of a side-track so
near to a building in the yards of a railroad company, and
under its control, as to endanger the lives of its employes
while switching cars on said track, is a violation of the duty
of a company to provide a safe place for its employes to
work in.

In *Wright* v. *Chicago, etc., R. Co., supra,* a railroad
brakeman sued his employer for injuries sustained by him
by being struck by a switch target while he was attempting
to get on the cab of an engine. The complaint alleged that
the cause of the injury was the negligence of the defendant
in placing the switch target dangerously near the track. It
was held that, as against a general verdict for the plaintiff,
it was not to be presumed that the defendant was not guilty
as charged, where the answers to interrogatories by the jury
did not expressly so find.

In *Southern Kan. R. Co.* v. *Michaels, supra,* it was held
that the placing and maintenance of a switch-stand on the

top of which there is an arrow or spear seventeen inches long, and which, when turned toward the track, is so close as to knock trainmen from the ladder on the side of the cars when engaged in the performance of their duties, is negligence on the part of the company.

In *Bryce* v. *Chicago, etc., R. Co., supra,* the railroad track curved somewhat on a bridge, so that at one corner the ends of bolts in a truss at the side of the bridge would be only fifteen inches from a car. It was the duty of the brakemen on freight-trains to loosen hand brakes while near and passing over the bridge, and plaintiff, while going down a ladder on a car, in the discharge of such duty, was struck by said bolts. It was held under the facts that he might recover. In the course of the opinion it was stated: "Nor can the railroad company be said to be negligent in permitting obstructions between stations which do not interfere in any way with the ordinary and useful operations of its trains." Also, "It was urged that the bridge was of standard width, and such as is commonly used by all railroads. No evidence in the record tends to sustain this claim." Again it is said: "No accident has occurred at this bridge during the nine years of its existence. There was no evidence in support of this contention and none was admissible." *Hudson* v. *Chicago, etc., R. Co.* (1882), 59 Iowa 581, 13 N. W. 735, 44 Am. Rep. 692.

In *Baltimore, etc., R. Co.* v. *Roberts, supra,* an action by a freight brakeman for personal injuries caused by the alleged negligence of the defendant in maintaining its tracks in too close proximity to each other, and in leaving a car loaded with lumber standing on one of its tracks, which struck plaintiff as he passed on a car in the line of his duty, the negligence of the defendant was properly submitted to the jury.

In *Illinois Cent. R. Co.* v. *Welch, supra,* plaintiff, while in the service of the company as a brakeman, sustained injuries; the evidence showing that the injury complained of

happened while plaintiff was engaged in the discharge of his duties, by collision with an awning projecting from one of the station-houses on defendant's line of road, whereby he was knocked off the car and injured. The dangerous position of the awning was well known to the division super-intendent and to the division engineer, whose attention had been called to it a long time prior to the accident. It was held that this was negligence of such a character that the company must be held liable for the damages sustained.

In *Chicago, etc., R. Co.* v. *Stevens, supra,* it is held that knoweldge of the danger from the close proximity of the coal chute to the tracks is not necessarily, as a matter of law, chargeable to an employe from the mere fact that he had frequently passed the chute, that his train had stopped there twice or more for coal, and that there was no rule of the company requiring employes to descend ladders of the freight-cars on the opposite side from such structures.

In *Central Trust Co.* v. *East Tenn., etc., R. Co., supra,* it was found from the evidence that C., a fireman on a loco-motive, while in the discharge of the duty assigned him by the engineer, and in the position which he could naturally and properly assume for the purpose of such duty, was knocked from the engine by a station-limit board placed near the track. Held, that it followed from these circum-stances that the board was too near the track, and was a dangerous structure, the maintenance of which was negli-gence. To quote from the report of the special master: "The evidence in the case is somewhat voluminous and con-tradictory. After a careful consideration of the same, I am of the opinion that the following conclusions are reasonably deducible therefrom: The station-limit board in question, a few days after the accident, was taken up by the employes of the defendant, and removed three feet further from the track than where it had originally been placed. From an actual measurement, it was shown that the post was located, at the time of the accident, six and one-half feet from the

near rail of the track, the measurement being from the hole left in the ground where the post formerly stood. The post was about seven feet high from the ground, having at the top a board with the words 'Station Limit' printed thereon, extending towards the rail eighteen inches. This would bring the end of the board on the top of the post four and one-half feet from the near rail of the track. It was shown from the evidence that the engine extended over the rail from two to three feet. These facts clearly show that the station-limit board was sufficiently near the track to have struck the employe, if he had been leaning out from the gangway two and one-half feet. Was this station-limit board, therefore, so near the track as to render it dangerous to servants of the defendant, in the proper and reasonable discharge of their duties? On this point the evidence of the defendant fixes the customary and safe distance of such obstructions at least eight feet from the rail of the track —one and one-half feet further than the actual measurement makes this station-limit board. In view of these facts, I think it is fair to conclude that this particular post was located too near the track."

In the case at bar the bridge, as shown by the evidence, was of standard width, and the sides, the usual distance from the track.

In *Potter* v. *Detroit, etc., R. Co., supra,* it was not only not shown that the structure was a usual one, and the ordinary distance from the track, but that there was no other like it or so close to the track along the road. The court admitted that, if there had been, this would have been sufficient notice of the obstruction in question.

In *Southern Kan. R. Co.* v. *Michaels, supra,* the structure was nine inches from the side of passing cars when the arrow on top of it was turned with the point towards the track, and it was so that the arrow so turned could not be readily observed. The court stated that "it does not appear that there was any other dangerously near the track."

In *Bryce* v. *Chicago, etc., R. Co., supra,* the obstruction was only fifteen inches from passing cars, and its nature and situation were such that it could not be readily observed. The reference in the opinion to the fact that there was no evidence that the bridge was of standard width, or that there was any necessity for projecting bolts, can only be accepted as an intimation that if the bridge containing the projecting bolt which constituted the obstruction had been shown to be of standard width, there would have been no liability.

We have aimed to give the substance of the foregoing decisions upon the subject of culpable negligence. The facts are distinguishable from those in the case at bar, which exhibit a necessary structure, properly located, straight, without peculiar or unusual mechanical detail, of standard width, and safe for the passage through and over of defendant's trains.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.