## BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY *v.* MCOSKER.

[No. 6,641. Filed July 1, 1909.]

1. PLEADING.—*Complaint.*—*Railroads.*—*Erecting Bridge too Close to Track.*—A complaint alleging that the plaintiff was the head brakeman of a freight-train, that he was required to ride in the cab of the engine and to observe the rear end of the train at all times, that defendant railroad company negligently maintained a bridge supported by iron posts which were four feet, nine and one-half inches from the rail, that such posts could have been placed farther away without detriment to the bridge, that the plaintiff while passing such point at night leaned out to observe the rear end of his train and was struck and killed, leaving a widow and two children, states a cause of action on behalf of such decedent's administrator. p. 256.

1. The petition alleges diverse citizenship and a controversy involving a claim for $10,000.—Reporter.

2. RAILROADS.—*Bridges.*—*Distance from Track.*—*Master and Servant.*—A railroad company is not guilty of negligence in maintaining a bridge whose pillars are four feet, eleven inches from the rail.  p. 258.

3. RAILROADS.—*Bridges.*—*Negligence.*—*Jury.*—The manner of constructing bridges by a railroad company is a question for railroad engineers, and no question of negligence therein can be submitted to the jury, since one jury might say the span is too narrow, and another, that it is not.  p. 260.

4. RAILROADS.—*Works and Ways.*—*Bridges.*—*Safe Place.*—The law requiring railroad companies to provide reasonably safe works, ways and machinery has no application to bridges maintained by such companies.  p. 260.

5. RAILROADS.—*Bridges.*—*Assumption of Risk.*—A railroad company maintaining a bridge which subjects employes to unusual dangers is required to notify such employes thereof, and thereafter such employes are conclusively held to assume all risks of danger therefrom.  p. 261.

6. RAILROADS.— *Bridges.*— *Negligence.*— In determining whether a railroad company was guilty of negligence in maintaining a bridge too near its track, the custom of other first-class roads will be considered.  p. 261.

From Scott Circuit Court; *Joseph H. Shea,* Judge.

Action by Jerry McOsker, as administrator of the estate of William McOsker, deceased, against the Baltimore and Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Edward Barton, Samuel Wells, McMullen & McMullens* and *Robert S. Alcorn,* for appellant.

*Brannaman & Brannaman, New & New* and *Mark Storen,* for appellee.

COMSTOCK, P. J.—The amended complaint on which the issues were formed avers, in substance, that on December 30, 1905, William McOsker, the decedent, was in the employ of appellant as head brakeman on a freight-train leaving North Vernon, Indiana, going west; that his duties required him to ride in the cab of the engine, and to observe the rear of the train at all times; that west of North

Vernon there is a deep cut under a bridge on a public high-way; that said bridge was built and maintained by appellant; that it was negligently constructed, because the iron posts on the north side were four feet, nine and one-half inches from the track—too close for a brakeman to lean out with safety and observe the rear end of a train; that said posts could have been placed a short distance farther from the track without endangering said bridge, thus rendering it safe for brakemen to perform their duties aforesaid; that appellant knew of this dangerous condition, and maintained no danger-signals on said bridge; that decedent did not know of said dangerous condition; that about 10 o'clock p. m. on said day said freight-train was running at a high rate of speed, a few minutes ahead of a fast passenger-train; that the night was dark, and the train passed under said bridge on a curve; that decedent, while standing in the gangway holding to handholds on the cab, and leaning out on the engineer's side of the engine, was struck by the iron post on north side of the track, and injured without fault on his part; that he died on January 1, 1906, from the effects of said injury; that he was twenty-one years of age, and left surviving him a widow and two children. The cause was put at issue and a trial had, resulting in a verdict and judgment for $3,500.

Among the errors assigned and not waived, the appellant challenges the action of the court in overruling its motion to make the amended complaint more specific, and in over-ruling its demurrer for want of facts. The theory of the complaint is that the defendant carelessly and negligently built and maintained a certain overhead bridge on its road, which made it dangerous and unsafe for its servants to per-form their duties. Certain particulars, wherein the com-plaint is asked to be made more specific, relate to contribu-tory negligence on the part of plaintiff. This is a matter of defense. Besides no substantial injury could result to

appellant by the overruling of such motion. The complaint was sufficient upon the theory upon which it was framed.

The primary question presented by the remaining alleged errors, and the only one we deem it necessary to decide, is whether appellant was guilty of negligence. The fol-

2. lowing undisputed facts are pertinent to the determination of this question. The bridge in question was fourteen feet, three and three-quarter inches wide in the clear at the east end thereof. The decedent was injured when his head came in contact with a north post of said bridge at the east end, located seven feet, three and one-quarter inches from the center of the track. At the time of the injury, decedent was leaning out of the north side of the gangway, looking towards the rear of the train. The outside measurement of the engine upon which decedent was riding was nine feet, ten inches. The outside clearance between the outer edge of the gangway of said engine and said post was two feet, four and one-quarter inches. Said bridge had been maintained for more than five years prior to the time of the injury complained of, with the post in the same condition and position. It is not disclosed that any other accident had ever occurred at said point. The decedent had made fifty-seven regular trips past the bridge—either twenty-eight in the daytime and twenty-nine in the night-time, or *vice versa*. The standard width of bridges of other roads in the United States is fourteen feet. Some of them use wider engines than appellant used. The standard width of bridges is fixed by conference with engineers representing all the roads in the United States. The standard width of a bridge of the kind in question is fourteen feet, that is, fourteen feet is the minimum width. This is the width in use on the Cincinnati, Hamilton and Dayton, Pere Marquette, Baltimore and Ohio, New York Central Lines, Lake Shore and Michigan Southern, Denver, Rio Grande and Western, Grand Rapids and Indiana, Boston and Albany, Lake Erie and Western, Michigan Central and the Pennsylvania System.

The complaint does not allege, nor is it shown, that decedent was directed by any one to stand where he stood, or to lean out of the engine. The train was going west, and decedent was struck by the easterly north post of said bridge. The fireman testified that he saw decedent leaning out farther than he had ever seen any one before. It also appears that the track at this point was in a cut, and that, if one were able to see the rear of the train at all, it would be necessary to direct the vision through the opening made by the cut. If the defendant was guilty of negligence, it was in maintaining a bridge that was too narrow. The question, therefore, is, What ought the width of such a structure to be?

In the case of *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, the court said at page 595: "It is a familiar rule that railroad companies are required to construct their roadways and appurtenances in such a manner as will enable their employes to perform the labor required of them with reasonable safety. *Louisville, etc., R. Co.* v. *Sandford* [1889], 117 Ind. 265; *Louisville, etc., R. Co.* v. *Wright* [1888], 115 Ind. 378-385, 7 Am. St. 432. This rule requires a railroad company, in any structure erected by it, to have regard for the safety of its employes while engaged in discharging their duties in relation thereto. The environments of the situation, the nature and extent of the services required of its employes, must have potent consideration, and such structure accomplished in a manner that has in view the highest degree of safety that ordinary care will provide. The appellant is excused if it maintains its roadway and appendages in a fashion generally approved and adopted by other first-class railroads of the country."

In the case before us appellee's decedent had safely passed over the bridge in question for several months prior to the accident, and other employes for years had done so without accident. There was nothing, therefore, in the experience of decedent or in the history of the road from which the accident could have been anticipated. The decedent was

twenty-one years of age, in good health, in possession of all of his faculties, and of average intelligence. It was not to be anticipated that an intelligent and ordinarily prudent man would unnecessarily expose himself to imminent or apparent danger. Against such possible conduct upon the part of the employe, the railroad company is not required to provide. The bridge was reasonably safe for conducting the business of the road. The cases of *Illick* v. *Flint, etc., R. Co.* (1888), 67 Mich. 632, 35 N. W. 708, *Sheeler* v. *Chesapeake, etc., R. Co.* (1885), 81 Va. 188, 59 Am. Rep. 654, *Kenney* v. *Meddaugh* (1902), 118 Fed. 209, 55 C. C. A. 115, *McKee* v. *Chicago, etc., R. Co.* (1891), 83 Iowa 616, 50 N. W. 209, 13 L. R. A. 817, *Wolf* v. *East Tenn., etc., R. Co.* (1891), 88 Ga. 210, 14 S. E. 199, *Sisco* v. *Lehigh, etc., R. Co.* (1895), 145 N. Y. 296, 39 N. E. 958, and *Bellows* v. *Pennsylvania, etc., R. Co.* (1893), 157 Pa. St. 51, 27 Atl. 685, were actions to recover for personal injuries, and in each case the clearance was less than in this case, and it was held not negligent to maintain such structures near the track.

The bridge in question was necessary to the operation of the road. Its size and the manner of construction should have reference to its purpose as a part of the system 3. for the convenience of the railroad company's employes. The plan followed in constructing its permanent structures is a matter of engineering, and not a question to submit to a jury. *Boyd* v. *Harris* (1896), 176 Pa. St. 484, 35 Atl. 222. One jury might say that the bridge was too narrow, and another, that it was not.

The law which requires a railroad company to furnish reasonably safe machinery and to keep its tracks, engines, cars and appliances in reasonably safe repair has no 4. application to such engineering questions as the one involved in this case. *Randall* v. *Baltimore, etc., R. Co.* (1883), 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; *Chicago, etc., R. Co.* v. *Driscoll* (1898), 176 Ill. 330, 52 N. E. 921; *Tuttle* v. *Detroit, etc., Railway* (1887), 122 U. S. 189,

7 Sup. Ct. 1166, 30 L. Ed. 1114; *Goldthwait* v. *Haverhill, etc., St. R. Co.* (1894), 160 Mass. 554, 36 N. E. 486; *Lovejoy* v. *Boston, etc., R. Corp.* (1878), 125 Mass. 79, 28 Am. Rep. 206.

5. If such structure is so located as to expose an employe to unusual danger, it is the duty of the company to advise its employes who are thus exposed to such danger. It is presumed that thereafter they will exercise the care necessary to protect themselves, and, if they suffer injury from the want of care, courts are certainly not at liberty to charge the employer with the consequences of their negligence, however strongly their misfortune may appeal to sympathy. A railroad company cannot be said to be negligent in permitting along its line permanent and necessary structures which do not interfere with the ordinary and reasonable operation of its trains.

6. In the recent case of *Cleveland, etc., R. Co.* v. *Haas* (1905), 35 Ind. App. 626, the appellee brought suit on account of the death of his decedent, who, while acting as a brakeman on appellant's road, was leaning out between the engine and tender, watching a hot-box on one of the cars, when he came in contact with a bridge and was instantly killed. In that case it was held that appellant owed to decedent ordinary care, and upon proper inquiry whether, taking into consideration the circumstances as they existed at the time of the accident, the company was negligent in failing to anticipate and provide against it, it was held that the company in the conduct of its business was only bound to anticipate such combination of circumstances, accidents and injuries therefrom as took into account the experience and practice of other companies. Ordinary care does not require that every possible contingency must be anticipated and guarded against, but only such as will likely occur.

It is significant that the legislature has fixed eighteen inches as the minimum distance from the nearest point of contact with the cab of the modern locomotive and any

structure on any railroad within the State.    §5289 Burns 1908, Acts 1907, p. 186, §12.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Rabb, Myers and Watson, JJ., concur.    Hadley, C. J., dissents.    Roby, P. J., absent.