MILTON D. BRYCE, as Trustee for MILO H. LOUNSBURY,
v. THE ·CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

**Railroads: NEGLIGENCE:** *Jury question.* A railroad track curved
1  somewhat on a bridge, so that at one corner the ends of bolts in
a truss at the side of a bridge would be only fifteen inches from
a car. It was the duty of brakemen on freight trains to loosen
hand brakes while near and passing over the bridge, and plaintiff,
while going down a ladder on a car, in discharge of such duty,
was struck by said bolts. *Held,* that he may recover damages.

EVIDENCE. Evidence that no accident had happened for nine years is
2  not admissible to show that the railroad company was not neg-
ligent in constructing the bridge.

RISK OF EMPLOYMENT: *Contributory negligence.* An experienced
3  brakeman on a moving train crossed a bridge twice a day for
fourteen months, and usually on the top of box cars, which were
twice as high as trusses built along the side of the bridge   The
track curved all the way over the bridge, rendering it difficult for
him to estimate the distance from the car to the trusses, at any
one point. *Held,* it cannot be said, as matter of law, that he
should have known it was dangerous to be on a car ladder at the
northeast corner of the bridge, where the ends of bolts projecting
from the truss were only fifteen inches from the car.

*Same.* A brakeman, whose attention was taken up in the discharge
4  of his duties, was struck by bolts projecting from a truss built on
the side of a bridge, when he was on the ladder of a freight car.
*Held,* it cannot be said, as matter of law, that he was negligent in
not looking out for dangers which resulted from improper con-
struction of the bridge, and of which he had no knowledge.

*Same.* A servant assumes the risk not only of dangers which he
3  appreciates, but of dangers which, by the exercise of ordinary
diligence, he ought to know and appreciate.

*Appeal from Cedar District Court.*—HON. WILLIAM P.
WOLF, Judge.

SATURDAY, OCTOBER 30, 1897.

ACTION for damages brought by plaintiff, as trustee for Milo H. Lounsbury, for injuries received while in the employment of defendant. Trial to jury. Verdict and judgment for the plaintiff, and defendant appeals. —*Affirmed*.

*Burton Hanson, Chas. B. Keeler*, and *T. B. Hanley* for appellant.

*Preston, Wheeler & Moffit, F. L. Anderson*, and *Wright & Wright* for appellee.

LADD, J.—The bridge was a Hawe truss, constructed nine years ago over a stream and highway about one thousand, five hundred feet east of defendant's station at Anamosa, on its line of road running from Marion to Farley, and was fourteen feet wide, and a few inches more than thirty-four feet in' length. The track over the bridge was curved so that the north rail was five or seven inches nearer the truss at the northeast corner than the south rail to the end opposite, and a few inches lower,—the track curving to the north,—causing the cars to "shuck" over and lean to the north in passing over the bridge. The trusses on either side were about one-half the height of a box car, with timbers held together by long iron bolts, with nuts on the inside. These bolts extended through the timbers about two inches beyond the nuts at the northeast corner of the bridge, and came within fifteen inches of a common stock car standing on the track. This distance would vary with the width of the car, the way it was loaded, and the speed of the train. The bridge was in a valley, with up grades in both directions; that to the east being a quarter of a mile east of the bridge and up a considerable hill, while that to the west commenced at the bridge, and was not heavy. From each extremity of the bridge the

track curved to the north.   In approaching the bridge
from the east, it was usual to set the brakes at the
summit of the elevation or hill, and loosen them at the
foot of the grade towards the bridge.   The train on
which Lounsbury was employed at the time of the acci-
dent consisted of fifteen or eighteen freight cars and a
combined baggage and passenger car, without air
brakes, and approaching Anamosa from the east.   The
hand brakes had been set at the top of the grade, as
usual; and, as the train reached the bottom, Lounsbury,
who was on the cars, near the center, began releasing
the brakes as he moved forward.     There were two
refrigerator   cars   immediately   behind   the   tender;
then a flat car, used for coal, and boxed in, except about
two feet on the end towards the engine, with sides and
end about two and one-half feet high; and back of this
a stock car.   The train was moving at the rate of eight
to ten miles per hour.   After releasing the brake at the
east end of the stock car, Lounsbury attempted to go
down the iron ladder on the north side of the west end
thereof, to the flat car,—the only way then possible,—
in order to release its brake and report on the engine
in event another car was to be taken at Anamosa.
When he had swung over the edge of the car, and had
descended about four rounds of the ladder, he was
caught by the end of one of the iron bolts referred to,
and permanently injured.   The court, in substance,
told the jury that the defendant had the right to lay its
track upon such a curve as it might deem best, and to
elevate the outside rail, and that it was not required
to conform the bridge to the curve, or to lay the track
so its center would be in the center of the bridge.   See
*Patton v. Railway Co.*, 73 Iowa, 310; *Tuttle v. Railway
Co.*, 122 U. S. 194 (7 Sup. Ct. Rep. 1166).   The one ques-
tion submitted was "whether the defendant was neg-
ligent in placing the truss of the bridge in question as

near to the track as the evidence shows." That it did was plainly alleged in the petition, and the jury was instructed, in passing upon this issue, "to take into consideration the question as to whether at that point said Lounsbury and others, as brakemen, would be required to ascend and descend cars in the discharge of their duties, while passing through the said bridge; and the mere fact that the truss was too near to admit of the passage of the plaintiff, if it was so, while riding on the ladder of the car, would not constitute negligence, unless you find that it was necessary for said Lounsbury and other brakemen, in the discharge of their duties, to be in that position, and that the ordinary use of the road at that place, and the ordinary duty of running trains, would require them to be on the side of the car while passing through the bridge." The court thus clearly recognized the rule that, in determining whether placing a structure along a railroad track is negligence, the place where it is located, and the purposes for which it is or might reasonably be expected to be used, must be considered. It will not be controverted that a railroad company may erect buildings, tanks, or other structures for use in the transaction of the business as near the track as the necessity or convenience of the company and its patrons, or the economical use of the road, may require, having due regard for the safety of those operating trains. These are necessary, and, owing to their location at or near the stations, employes are constantly put on their guard. Nor can the railroad company be said to be negligent in permitting obstructions between stations which do not interfere in any way with the ordinary and usual operation of trains. The evidence tends to show that, as the trains approached from the east, brakemen, in the discharge of their duties as such, were required to set and loosen the brakes near to and

over the bridge, and that in doing so they necessarily passed up and down the ladders at the side of the cars, and that the space at the corner of the bridge was so narrow that a man in using a side ladder at that place would be likely to be caught on the projecting bolts. Neither the necessity nor the convenience of the defendant or its patrons required so close a proximity of the rail and truss. It was urged that the bridge was of standard width, and such as is commonly used by all railroads. No evidence in the record tends to sustain this claim. Again, it is said no accident has occurred at this bridge during the nine years of its existence. There was no evidence in support of this contention, and none was admissible. *Hudson v. Railway Co.*, 59 Iowa, 581. The necessity of the bolts projecting between two and three inches beyond the nuts does not appear, though these increased the danger of the locality. Nor can it be doubted that the truss could have been placed at such a distance from the track as to render the place safe for the work of brakemen. That railroad companies are bound to provide a track and equipments which are reasonably safe is not questioned. The truss so near the track, with the projecting bolts, was well calculated to catch and drag down any brakeman who might be required, in the performance of his duty, to be on the side of the car. Braking was habitually done in that locality and over the bridge, and the defendant was clearly negligent in failing to so adjust its truss and track and so place the bolts that the work required of brakemen might be performed with reasonable safety to themselves. Many authorities are called to our attention by the defendant. In *Illick v. Railway Co.*, 67 Mich. 637 (35 N. W. Rep. 708), it does not appear that braking was ordinarily required over the bridge, and it seems to have been conceded that the bridge, as originally constructed, was faultless; and the court held that the

company was not bound to change it so as to conform to the more recent notions of bridge building. In *McKee v. Railway Co.*, 83 Iowa, 622, a brakeman, in order to ascertain what was wrong with the running gear of a freight car, descended the ladder at the side, and, while swinging out to look under, came in contact with the wing of a fence. The court held that, as the accident happened at a place where the employe could not be reasonably expected to be, there was no negligence, saying: "So far as the record shows the accident in question was so improbable, and it was due to causes of such rare occurrence, that the defendant, in the exercise of ordinary diligence, was not required to provide against it." The same rule controlled in. *Koontz v. Railway Co.*, 65 Iowa, 224, and *Davis v. Railway Co.*, 21 S. C. 104. The *Snow Bank Cases* turn on the proposition that the dangers arising from the high embankments of snow are such as are inseparable from the operation of railroads where snow prevails, and are therefore assumed by the employes. *Dowell v. Railway Co.*, 62 Iowa, 629; *Brown v. Railway Co.*, 64 Iowa, 652, In this case the defendant might have accomplished its purpose, and at the same time have protected its employes from danger. The true rule is thus stated. in *Loftus v. Ferry Co.*, 84 N. Y. 459: "If the defendant ought to have foreseen that such an accident might happen, or if such an accident could have reasonably been anticipated, the omission to provide against it would be actionable negligence." It is not claimed that to place the track and truss so near together at every bridge on the road would be negligent, but to do so where the employes are required to go up and down the ladders on the side of the cars, in the discharge of their duties, in the ordinary work in which they are engaged. In this respect it is like the *Cattle-Guard Cases*. Ordinarily such a guard need not be planked, but, when in switching grounds, this may be necessary in order to

insure the safety of employes.    *Ford v. Railway Co.*,
91 Iowa, 179; *Railway Co. v. Graves* (Tex. Civ. App.)
21 S. W. Rep. 606, is in point. There the brakeman was
injured as in this case, and the company adjudged neg--
ligent in placing its track too near one side of the
bridge,—three and one-half inches nearer one side than
the other.   As bearing on this question, see 3 Elliott,
Railroads, section 1269; *Railway Co. v. Welch*, 52 Ill.
183; *Railway Co. v. Russell*, 91 Ill. 299; *Kelleher v.
Railway Co.*, 80 Wis. 584 (50 N. W. Rep. 942); *Johnson
v. Railway Co.*, 43 Minn. 53 (44 N. W. Rep. 884).

II.   It is insisted that, under the circumstances
disclosed in the record, Lounsbury must be held, as a
matter of law, to have assumed the risk incident to
the condition of the bridge.   The evidence that
he did not have actual knowledge of the danger-
ous proximity of the truss is undisputed.   Ought
he to have known thereof by the exercise of ordinary
diligence?   If he could have ascertained, by reasonable
observation, its dangerous proximity to the track, it
must be regarded as an obvious danger, which was
assumed by continuing in the service of the defendant.
In other words, what a man in law ought, by the exer-
cise of reasonable diligence to know, he does know.
*Way v. Railway Co.*, 40 Iowa, 343; *Heath v. Mining Co.*,
65 Iowa, 740; *Brown v. Railway Co.*, 69 Iowa, 162; *Magee
v. Railway Co.*, 82 Iowa, 253; *Perigo v. Railway Co.*, 52
Iowa, 277; *Wells v. Railway Co.*, 56 Iowa, 520.
Lounsbury was an experienced brakeman, and
had been over this road and bridge twice a day
for fourteen months.   But he had always done so while
the train was in motion, and usually when on the
running board along the top of the cars.   The trusses
were only half the height of a box car.   The track in
both directions from the bridge curved to the north.
He testifies that in approaching the bridge he could

not see the superstructure from the middle of the cars. When approaching on a sharp curve, as the witnesses call this, he would be unable to estimate with any degree of accuracy the distance of the truss from the cars or track. He had ridden through on the platform of the combination car, but as the track was on a curve, the distance to the truss would be ever changing. When looking from the north side, the truss came in his line of vision, and he could not see between it and the cars. On the other side the space would be exaggerated, though the south truss was only seven inches further from the track. Much difficulty would be experienced in saying, with the opportunities enjoyed by Lounsbury, whether the truss was dangerously near the track. He had the right to assume, in the absence of knowledge to the contrary, that the place was reasonably safe for doing the work required of him. Situated as he was, and with his opportunities of knowing, it cannot be said, as a matter of law, that he had knowledge of the dangerous proximity of the projecting bolts to the passing cars. The authorities cited by the defendant are not controlling. In each case the obstruction occasioning the injury had been observed, or was in such plain view that it could be seen by the mere looking. In *Illick's Case* the truss was fourteen feet high, and the brakeman had been warned of the danger. The brakeman had seen the post by which he was injured, in *Austin v. Railway Co.*, 164 Mass. 284 (18 N. E. Rep. 209). So, where a brakeman was struck who had not seen it, he was allowed to recover by the same court. *Scanlon v. Railway Co.*, 147 Mass. 484 (41 N. E. Rep. 288). So, where a brakeman was struck by the overhead timber of a low bridge, it was held that he could have observed the danger by looking. *Wells v. Railway Co.*, 56 Iowa, 520. See *Williams v. Railway Co.*, 110 N. Y. 633 (22 N. E. Rep. 1117); *Railway*

*Co. v. Sentmeyer*, 92 Pa. St. 276; Elliott, Railroads, section 2003. The law in such cases is not doubted, but in each must be determined on the particular facts shown. Whether Lounsbury ought to have known of the danger is a question about which men might honestly differ, and was therefore one of fact, to be tried by the jury. *Moore v. Railway Co.*, 102 Iowa, 595.

III.   Did Lounsbury contribute by his own negligence to his injury? One of the rules of the company, strictly enforced, according to the evidence, was that brakes should be so manipulated that the engineer at all times would have control of the train. These had been set at the top of the grade, and, in order to give effect to this rule, it became necessary to loosen them at the bottom. When Lounsbury, in doing this, reached the brake on the common stock car, he was five or six car lengths from the bridge. His attention was on his work, which he was doing rapidly. When at the west end of the car, he swung his feet over, turned, and started down the ladder. He did not look ahead, or think of the bridge. He says his attention was absorbed in looking for the hand holds, and for a place to light on the coal flat, which, it will be remembered, had sideboards two and one-half feet high. His purpose and his duty were to loosen the brake on the coal flat, and go to the engine, there to be ready in event a car was to be taken at the station. If he was not charged with knowledge of the danger, he might well give his entire attention to the performance of his duties. True, he might have waited till over the bridge. Most accidents might be avoided by the possession of sufficient foresight. If he knew of the danger, he ought to have avoided it; but, without such knowledge, he cannot be held, under the circumstances disclosed, to have been negligent in failing to do so. Brakemen are expected to work rapidly, and necessarily give close attention to what they are at. With

the train moving at the rate of eight or ten miles an hour, the difficulty in landing on the flat car with the sideboards, and the necessity of preserving a sure hold on the hand holds, it cannot be said, as a matter of law, that he was further required to anticipate and keep a lookout for dangers he knew not of. Indeed, had he looked he could not have ascertained, at any considerable distance from the bridge, the dangerous proximity of the truss. Whether he was in the exercise of ordinary care was a question of fact, to be determined in the usual way. See *Whipple v. Railway Co.* (R. I.) 35 Atl. Rep. 305; *Ferren v. Railway Co.*, 143 Mass. 197 (9 N. E. Rep. 608).

IV.  In an instruction, the court told the jury that "the defendant would not be negligent if it failed to notify said Lounsbury that said bridge was dangerously constructed or maintained." The defendant is not in a situation to complain of this instruction. There was no claim of having notified Lounsbury. It was not an issue in the case. While erroneous, the instruction was favorable to the defendant, and therefore without prejudice.—AFFIRMED.