[No. 5318. Decided September 6, 1905.]

JOSEPH T. KREBBS, *Respondent,* v. OREGON RAILROAD & NAVIGATION COMPANY *et al., Appellants.*[1]

MASTER AND SERVANT—RAILROADS—OBSTRUCTION NEAR TRACK— UNNECESSARILY RIDING ON SIDE OF CAR—WIDTH OF BRIDGE—DUTY OF COMPANY. A railroad company is not liable to a brakeman, struck by a projecting bolt while riding on the side of a car when the train was passing through a bridge between stations, the proper discharge of his duties in cutting off the air from the brakes 1,600 feet or more distant from the bridge not requiring him to ride on the side of the car at that place, and the rules of the company requiring him to note the position of bridges.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered March 10, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a brakeman, riding on the side of a car, and struck by a projecting bolt in a railroad bridge. Reversed.

*W. W. Cotton, L. S. Wilson,* and *Thos. O'Day,* for appellants.

*Barnes & Latimer* and *Alfred M. Craven,* for respondent, contended, among other things that the appellant was bound to place its permanent structures in reference to its track so as to avoid danger. *Kelleher v. Milwaukee etc. R. Co.,* 80 Wis. 584, 50 N. W. 942; *Johnson v. St. Paul etc. R. Co.,* 43 Minn. 53, 44 N. W. 884; *Nugent v. Boston etc. R. Co.,*

[1]Reported in 82 Pac. 130.

80 Me. 62, 6 Am. St. 151; *Chicago etc. R. Co. v. Russell,*
91 Ill. 298, 33 Am. Rep. 54; *Flanders v. Chicago etc. R. Co.,*
51 Minn. 193, 53 N. W. 544; *Whipple v. New York etc.
R. Co.,* 19 R. I. 587, 61 Am. St. 796; *Fort Worth etc. R.
Co. v. Graves* (Tex. Civ. App.), 21 S. W. 606; *Bryce v.
Chicago etc. R. Co.,* 103 Iowa 665, 72 N. W. 780; *McDan-
nald v. Washington etc. R. Co.,* 31 Wash. 585, 72 Pac. 481;
*Illinois Cent. R. Co. v. Welch,* 52 Ill. 183, 4 Am. Rep. 593;
*Snow v. Housatonic R. Co.,* 8 Allen 441, 85 Am. Dec. 720;
*Crandall v. New York etc. R. Co.,* 19 R. I. 594, 35 Atl. 307;
1 Labatt, Master & Servant, § 70, and cases cited. The train
operator cannot be held to be guilty of contributory negli-
gence unless he knows that the object is dangerously close.
*Cowie v. Seattle,* 22 Wash. 659, 62 Pac. 121; *Greenleaf v.
Dubuque etc. R. Co.,* 33 Iowa 52; *Snow v. Housatonic R.
Co., supra.* The brakeman was obliged to descend the car
while the train was in motion, and cannot be expected to
measure the distance with exactness. *Flanders v. Chicago
etc. R. Co., supra.*

PER CURIAM.—On and prior to the 23d day of March,
1903, the defendant railway company owned and operated
a line of railroad, between Tekoa, in the state of Wash-
ington, and Wallace, in the state of Idaho. The defendant
Campbell was superintendent of the defendant railway com-
pany, and it was his duty, as such, to see that the tracks
and bridges on the above section of road were properly con-
structed, and in reasonably safe condition and repair. The
defendant Kennedy was superintendent of bridge construc-
tion for the defendant railway company, and it was his duty,
as such, to see that the bridges on the above section of the
road were properly constructed and repaired.

On the above date and for about two weeks prior thereto,
the plaintiff was in the employ of the defendant railway
company as head brakeman on a freight train running be-
tween Tekoa and Wallace. When the freight train ap-

proached the town of Wallace, it ran up the main line to a switch, some 1,600 or 2,000 feet distant from a bridge on the line of the road, near the town of Wallace, and between the bridge and the town. At this switch, the caboose and way-freight attached to the rear of the train were cut off, and allowed to drop back on the main line, and the balance of the train was run on to the side-track. The engineer then picked up the caboose and way-freight, and proceeded to the depot at Wallace, about a mile beyond. As soon as the train stopped at the switch in question, it was the duty of the plaintiff to be on hand to cut off the air, detach the caboose and way-freight, and signal the engineer.

As stated above, on the line of the road, about 1,600 or 2,000 feet before reaching the switch in question, was a bridge, about 100 feet in length and about six feet in height above the floor. The bridge was an ordinary truss bridge, fourteen feet in width, and had been in use some twelve or fourteen years. A bolt extended about three and one-half inches beyond the timbers towards the interior of the bridge, and the rails were five inches nearer this side of the bridge than the other, that is, two and one-half inches from the center of the bridge.

About ten o'clock of the night of March 23, 1903, the train whistled into Wallace and, as it did so, the plaintiff, who was in the caboose, went out on the top of the train and descended a ladder at the side of one of the freight cars to be in position to cut the air, uncouple the cars, and signal the engineer when the train stopped. As he did so, he claims he was struck by the bolt above described in the side of the bridge, and knocked from the car on to the ground, one of the wheels passing over his leg. An ordinary freight car is eight feet and two inches wide, and the ladder at the side extends three inches from the car; so that, if the rails were in the middle of the bridge, with no bolt or other obstruction, it would be two feet eight inches from the ladder to the side of the bridge. Deducting from

this the two and one-half inches which the rails were out of place, and the three and one-half inches which the bolt protruded, leaves two feet and two inches between the ladder and the end of the bolt, assuming that the car at all times stood perpendicular on the track. The plaintiff brought this action to recover damages for the injuries received in said fall, and from the verdict and judgment in his favor, this appeal is taken.

While the respondent complained of the bolt in the interior of the bridge, and of the location of the rails on the bridge, yet the complaint and the instructions of the court would warrant a recovery if neither of these defects existed, provided, the bridge was not wide enough to permit the respondent to pass down the side of the car in safety as the train passed over the bridge. What duty did the appellants owe the respondent in the construction and maintenance of bridges, situated as this one was? Numerous cases are cited where railway companies have been held liable to employees for injuries received from section houses, depots, coal sheds, signal posts, telegraph poles, etc., situated too close to the track. These structures differ materially from railroad bridges, which constitute a permanent part of the road bed, and are of necessity part and parcel thereof.

In the case of *Fort Worth etc. R. Co. v. Graves* (Tex. Civ. App.), 21 S. W. 606, cited by the respondent, the plaintiff was climbing a ladder on the side of a box car, on a dark cold morning, in response to the usual signal, as the train passed over a bridge near Wichita Falls, and was knocked from the train by one of the stays of the bridge. The court held that the verdict of the jury, which had support in the evidence, imported a finding that the plaintiff, when injured, was in the prudent discharge of his duty, and without fault or negligence; that the accident was due to the negligence of the company; and said, "While the inference of liability rests upon a rather slender basis, we

are not prepared to hold that it was not a legitimate deduction from the facts contained in the record."

In the case of *Bryce v. Chicago etc. R. Co.,* 103 Iowa 665, 72 N. W. 780, cited by the respondent, the plaintiff was descending the side of a freight car to loosen the brakes, and was struck by the timbers of a bridge constructed much like the bridge in question. A verdict for the plaintiff was sustained. The verdicts in both cases were upheld upon the express ground that the plaintiffs were descending the side of the car as the train passed over the bridge *in the discharge of their duties.* In the last case cited, the court instructed the jury,

". . . to take into consideration the question as to whether at that point said Lounsbury and others, as brakemen, would be required to ascend and descend cars in the discharge of their duties, while passing through the said bridge; and the mere fact that the truss was too near to admit of the passage of the plaintiff, if it was so, while riding on the ladder of the car, would not constitute negligence, unless you find that it was necessary for said Lounsbury and other brakemen, in the discharge of their duties, to be in that position, and that the ordinary use of the road at that place, and the ordinary duty of running trains, would require them to be on the side of the car while passing through the bridge."

In reference to this instruction the supreme court of Iowa said:

"The court thus clearly recognized the rule that, in determining whether placing a structure along a railroad track is negligence, the place where it is located, and the purposes for which it is or might reasonably be expected to be used, must be considered. It will not be controverted that a railroad company may erect buildings, tanks, or other structures for use in the transaction of the business as near the track as the necessity or convenience of the company and its patrons, or the economical use of the road, may require, having due regard for the safety of those operating trains. These are necessary, and, owing to their location at or near the stations, employees are constantly put on their guard.

Nor can the railroad company be said to be negligent in permitting obstructions between stations which do not interfere in any way with the ordinary and usual operation of trains."

See, also, *Illick v. Flint etc. R. Co.,* 67 Mich. 632, 35 N. W. 708.

We are of the opinion that the correct rule is announced by the supreme court of Iowa in the case above cited. If the employees of a railroad company are required to be on the sides of its cars in the discharge of their duty, as the trains pass over bridges, it is incumbent on the company to so construct and maintain its bridges as to make them reasonably safe for such use. But if the employees are not required to be on the side of the cars at such times, the company violates no duty it owes them by failing to construct its bridges of sufficient width to permit of an employee riding on the side of a car over a bridge. Applying that rule in this case, the testimony does not warrant a recovery. The plaintiff had passed over this bridge a number of times before, knew of its location, and the rules of the company required him to note the location of all bridges. He was not required to be on the side of the car, as the train passed over this bridge, in the proper discharge of his duty. His sole duty was to be in position to cut off the air, uncouple the cars, and signal the engineer when the train stopped at the switch. The proper discharge of this duty did not necessitate or justify his presence on the side of the car at the time he received the injury complained of, and the appellant company violated no duty it owed him.

The judgment of the court below is therefore reversed, with directions to dismiss the action.

DUNBAR, J. (dissenting)—I dissent. The ladder was evidently placed on the side of the car for the use of the brakemen, and the plaintiff in the hurried discharge of his duties ought not to be held to too nice a discrimination in the time

when, or circumstances under which, he should use a particular appliance. The company was guilty of gross negligence in maintaining the bridge in a condition dangerous to its employees, and ought to respond in damages for the injuries sustained. The judgment should be affirmed.

## ON PETITION FOR REHEARING.
[Decided February 26, 1906.]

PER CURIAM.—A rehearing was granted in this case on account of a change in the membership of the court after the case was originally submitted. After further consideration, we see no reason to change or modify the views expressed in the original opinion on file, and the rehearing is accordingly denied.

DUNBAR, J., (dissenting)—I dissent. I think the judgment of the lower court should be affirmed.