[No. 7675.   Decided March 29, 1909.]

A. W. SMITH, *Appellant*, v. SPOKANE FALLS & NORTHERN RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT—OBSTRUCTIONS NEAR RAILROAD TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  The foreman of a wrecking crew in charge of a large number of laborers being transported in box cars, charged with the duty of looking after their safety, is not guilty of contributory negligence, as a matter of law, in looking out of the side of the car to discover the cause of an alarm and the swaying of the cars indicating danger ahead, whereby he was struck by a coal chute of which he had no knowledge and which was negligently constructed nine inches nearer to the tracks than the ordinary minimum distance, the side doors of the cars being the only way of egress; as his judgment in such case cannot be too closely scanned. (GOSE and MOUNT, JJ., dissenting).

SAME—OBSTRUCTIONS NEAR TRACK—PROXIMATE CAUSE OF INJURY. The maintenance of a coal chute dangerously near a railroad track is the proximate cause of an injury to one who, in the line of his duty, has occasion to look out the side door of a box car.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered May 18, 1908, granting a nonsuit at the close of plaintiff's case, after a trial before the court and a jury, in an action for personal injuries. Reversed.

*Fred Miller* and *Robertson & Rosenhaupt*, for appellant.

*L. C. Gilman* (*A. J. Laughon*, of counsel), for respondent.

DUNBAR, J.—The plaintiff was in the employ of defendant, as foreman of a gang of men whose duty is was to fix tracks, pick up wrecks, and generally assist in the repair of the roadbeds where wrecks, washouts, and other damages had occurred.  The plaintiff had been in the employ of the defendant company before, but during his absence the defendant erected a large coal bunker near its track at Valley station.  The coal was taken from the bunker by means of chutes which were pulled down and balanced by heavy iron

[1]Reported in 100 Pac. 747.

weights hanging beneath them. These weights were attached in such a manner that, when the chute was put back in place after having been emptied of coal into the tender of the engine being supplied, they would at places project beyond others towards the track and come very close to the sides of the box cars standing or passing upon the track, some as close as fifteen inches. The plaintiff was in charge of nine ordinary box cars, with between fifty and sixty Italian workers in them. The men slept and ate in the box cars, and were moved from place to place in said cars. The plaintiff testified that, when approaching the above mentioned coal bunker and station at Valley, his attention was called to a noise made by some one hallooing, and to the rolling of the cars in which they were confined, and that in order to discover the cause of the alarm he put his head out of the side door of the box car, and was struck on the head by the weight of one of the coal chutes, injuring him, for which injury this suit was brought. At the close of plaintiff's testimony, judgment of nonsuit was granted on motion of the defendant, and this appeal follows.

It may be said that the only way of ingress to or egress or observation from the cars in question was by the side doors. It was the contention of the respondent, and so expressed in its motion, that there was no proof establishing on the part of the appellant any want of care or any negligence of the respondent. The court took the view, that there was no testimony showing that the appellant was acting in the discharge of his duty when he put his head outside of the car; that he was an employee simply being transported, was not in charge of the train, and was in no wise authorized to direct its movements; and that when he put his head out of the car he was guilty of contributory negligence which would bar his recovery. The record shows, and it was conceded, that the coal chute in question was dangerously near the track, and it was further conceded that the appellant did not know it was there. This chute was some nine inches

nearer than the minimum distance of the ordinary chute, and the principal question discussed is whether the appellant was in the line of his duty when he put his head out of the door, the contention of the respondent being, as was indicated by the court, that he was not in charge of the train in any way, and that his cars were attached to freight cars which were in charge of regular officers. The testimony is not as definite as it might be as to what the duties of the appellant were, but he did testify that his duty was that of doing work and looking after the men. In describing the affair, the appellant testified as follows:

"Q. Now, just state what happened on this evening, Mr. Smith. A. As we approached Valley station the train gave a roll and there was a noise, some one talking or hollering, and I looked out the door. . . . I just looked out and looked around to see what was up. . . . I came in contact with a weight on the coal chute at the back of my head. . . . In pulling into Valley station on the 7th day of August, 1906, the car gave a roll and I looked out to see what was up. Some one called loud or something, and I gets up in the car and looks out, and the minute I looks out the car gave a kind of roll and the weight—the weight piece—it is like a weight— I don't know what it is but it is like a weight, attached to the coal chute, it was very close and it cut my head there and it knocked me to my knees in the car and came very near driving me out."

The appellant also testified that there was no way of looking out of these outfit cars excepting by the side doors; and that that was the usual way in which employees performed the duty of seeing if anything was the matter with the train, while the train was in motion. Again, in describing the affair, he testified:

"It was my duty to see none were hurt. I heard a cry and the car was beginning to roll, and I stepped to the door to look out, and some one was calling, you know, and I looked out and the roadmaster looks out one side of the car and I the other side and I was struck there," etc.

He also testified, that he was assisting in every way pos-

sible so as not to delay trains when they were on the line moving from one point to another; that they had tools and one thing and another on the train, which it was his duty to look after and see that none were lost; that the tools were sometimes packed under the cars and taken from one point to another, and that it was his duty to look after the tools and outfit. The above is substantially the testimony in the case. The testimony of the appellant and other witnesses was also to the effect that, at the distance the ordinary chutes were from the cars, a man would not have been hurt if he had put his head out as he did in this instance.

Respondent cites, and it is claimed that the court relied upon, the case of *Krebbs v. Oregon R. & Nav. Co.*, 40 Wash. 138, 82 Pac. 130. But whatever may be said of that case, the rule announced there would not be controlling in the case at bar. That was where the brakeman was struck by a projecting bolt, while riding on the side of a car when the train was passing through a bridge between two stations, where it was not his duty to ride on the side of the car at that place, and where the rules of the company required him to know the position of bridges. The court, with reference to the notice that must be given, distinguished bridges from other less fixed structures in the following language:

"Numerous cases are cited where railway companies have been held liable to employees for injuries received from section houses, depots, coal chutes, signal posts, telegraph poles, etc., situated too close to the track. Those structures differ materially from railroad bridges, which constitute a permanent part of the roadbed, and are of necessity part and parcel thereof."

Most of the cases cited by the respondent are of that kind. It must be conceded in this case that the railroad company was guilty of negligence in building this dangerous structure closer than was necessary to the track; and unless it appears that the appellant was guilty of contributory negligence or that he assumed the risks incident to the duty which

he was performing, it necessarily follows that the respondent is responsible to appellant for the injuries which he sustained.   The rule is laid down by 3 Elliott on Railroads (2d ed.), § 1303, as follows:

"If the employee is, at the time of the injury, reasonably within the line of his duty he is within the rule that the employer is bound to exercise ordinary care to prevent injury to him because of defects in the working place or appliances."

As to the proximate cause of the injury, it must necessarily have been the negligence of the company in maintaining the dangerous structure unnecessarily near the track.   In discussing this question, it is said by the court in *Baltimore etc. R. Co. v. Reaney*, 42 Md. 117, 136, quoted by the court in *Maryland Steel Co. v. Marney*, 88 Md. 482, 42 Atl. 60, 71 Am. St. 411, 42 L. R. A. 842, at page 847:

"But it is equally true that no wrongdoer ought to be allowed to apportion or qualify his own wrong; and that as a loss has actually happened, whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act.   To entitle such party to exemption, he must show, not only that the same loss might have happened, but that it must have happened, if the act complained of had not been done.   .   .   .   The principle is well settled that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and   directly brought about by intervening causes, if those intervening causes were set in motion by the original wrongdoer."

On the question of the nice judgment which is to be exercised by an employee in the attempt to save either himself or his fellow workmen, or those under his control, from peril, the courts all agree that his action at such time cannot be too closely scanned, or his judgment too nicely weighed.   But this case is essentially different in the main from the ordinary cases cited and relied upon.   Here a large number of men were confined to box cars with no means of escape or of pro-

tecting themselves excepting by egress through the side doors of the cars. It would certainly be a monstrous doctrine to announce that a human being could be shut up in a box car, and that, when his position became apparently dangerous, if he undertook to escape the danger or to guard against it by making the reasonable and necessary observations of the situation, such effort on his part should be the cause of the loss of his rights. In the case at bar, if the testimony of the appellant is true, notwithstanding the fact that he was in charge of the running of the cars, he was in charge of this large body of men, and it was his duty to look out for them, and upon notice of any kind, either the hallooing of the men or the swaying of the cars, indicating danger to the men, it was his imperative duty to make such observation and examination as was necessary for the protection of the men under his care and control.

We think there was sufficient testimony on this subject to go to the jury, and the judgment will therefore be reversed.

RUDKIN, C. J., CHADWICK, FULLERTON, and CROW, JJ., concur.

GOSE, J. (dissenting)—The appellant was an employee of the respondent and being carried to a place where he and his men were to work. He was not engaged in the performance of any duty. When he put his head outside of the car 15 inches, without looking forward to see what he was approaching, he was clearly guilty of contributory negligence. I therefore dissent.

MOUNT, J., concurs with GOSE, J.

PARKER and MORRIS, JJ., took no part.