[No. 14430. *En Banc.* June 22, 1918.]

CLARA BALL, *as Administratrix etc., Respondent,* v.
NORTHERN PACIFIC RAILWAY COMPANY,
*Appellant.*[1]

MASTER AND SERVANT—INJURIES TO SERVANT—SAFE PLACE—BRIDGES —CLEARANCE. In an action for the death of a brakeman, struck by a railroad bridge while leaning out to inspect a hot box, a railroad company is not negligent in maintaining the bridge with a clearance of only two feet, where that was the standard construction and employees were not required to be upon the side of the cars or engines when passing over the bridge.

SAME—INJURIES TO SERVANT—DEFECTIVE LOCOMOTIVES. In an action for the death of a brakeman, struck by a railroad bridge while leaning out to inspect a hot box, evidence that the engine was leaking steam to such an extent as to obscure the deceased's view of the bridge, and that it began to leak steam shortly after leaving the roundhouse and the condition became worse as the trip progressed, is sufficient to take the case to the jury upon the question of negli-. gence in the operation of an engine in a defective condition, and whether that was the proximate cause of the death.

[1]Reported in 172 Pac. 1029.

SAME—INJURIES TO SERVANT—DUTY TO WARN. In such a case, the failure of the engineer to warn the deceased when the train was approaching the bridge, was not negligence, where there was no negligence in failing to sooner discover his position, and as soon as it was discovered the engineer called to him and attempted to stop the train.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 5, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

*C. H. Winders*, for appellant.

*Griffin & Griffin*, for respondent.

MACKINTOSH, J.—The plaintiff sued under the provisions of the Federal employers' liability act to recover damages resulting from the death of her husband while employed as head brakeman upon one of defendant's freight trains. The complaint alleged that the defendant was negligent, due to (1) insufficient clearance in the bridge at which the deceased lost his life; (2) defects in the locomotive pulling the train; (3) negligence on the part of the engineer who was driving the engine at the time. For answer, the defendant denied any negligence, and alleged that the deceased assumed the risk. Upon these issues the case was tried to the court and a jury, and resulted in a judgment in favor of the plaintiff for $8,000, half of which was apportioned to the widow, and half to a minor child. At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court for a directed verdict. These motions were denied. After verdict, the defendant moved for a judgment notwithstanding the verdict and for a new trial. These motions were denied and judgment was entered. The defendant has appealed from that judgment.

The undisputed facts may be briefly stated as follows: James E. Ball, the husband of the respondent, was an experienced brakeman in the employ of the appellant. On the evening of November 20, 1916, at about eight o'clock, the train crew, consisting of a conductor, three brakemen, the engineer and the fireman, left Auburn Junction with a train of fifty-five cars, to be taken over the Cascade Mountains to Ellensburg. Mr. Ball was the head brakeman, and his position on the train when in motion was on the engine. The engine, a Mallet, was a large one, in fact, two engines under one boiler. It had sixteen driving wheels, eight under the front part and eight under the after part. This class of engines is in common use on the Northern Pacific Railway, and on other railroads drawing heavy trains over the mountains. On account of the length of the engine, the steam pipes connecting the boilers with the two engines were fitted with joints which permitted the engine to move around curves, of which there were many on that division of the railroad. The flanges of these sixteen wheels on the engine were oiled by means of a jet of steam which forced the oil against the flanges, so that there was always some steam escaping from these engines. On account of the movable joints, it was not uncommon for these engines, after going some distance, to leak more or less steam from the steam pipes. When this engine was placed upon the train it had been inspected. There is apparently no claim of negligence against the railway company for not properly inspecting the engine.

After the train left Auburn and had gone about thirty miles on its eastward journey upon the west side of the mountains, it was leaking steam to such an extent that, upon two or three occasions when the train was running slowly, the engineer could not see the semaphores at the side of the tracks. When the

train had passed through the Cascade tunnel at the summit of the mountains, a hot box was discovered on the right-hand side of the second car back from the engine. This hot box, at that time, was cooled down by Mr. Ball and an assistant brakeman, and the train proceeded to the next station down the mountain, when one of the brakemen again examined the hot box and concluded that it was proper to take the car on to its destination. After the train had proceeded on its way to somewhere in the vicinity of the Cle Elum river, and when the train was running from twenty to twenty-five miles an hour down grade, the engineer noticed that the hot box upon the freight car was "throwing fire." At that time Mr. Ball, the head brakeman, and another brakeman and the fireman were riding upon the engine. The engineer called the attention of the brakemen to the condition of the hot box; they each examined it from a position between the tender and the engine and gave the engineer a signal that the hot box was all right. After a little while the engineer again called the attention of the brakemen to the hot box, and a little later the engineer asked the fireman to examine the condition of the hot box. The fireman did not do so, but Mr. Ball, who evidently overheard the engineer, went out between the engine and the tender, got down upon the step of the engine, placed his hands behind him, holding to the grab-irons, and leaned out, face forward, to look at the hot box. The engineer, upon looking down and seeing him in that position, and seeing that the train had approached nearly to the bridge —the engine was then within about forty feet of the bridge—called to the brakeman, who, leaning out too far, was almost instantly struck by the iron beam at the end of the bridge, and was killed.

There is no dispute upon any of the facts above stated. Other facts may be referred to in a discussion

of the questions here presented. As stated above, the plaintiff, in the court below, and here, relies upon three facts to show negligence: First, that the bridge upon which Mr. Ball was killed was not constructed wide enough to make a sufficient clearance for a person upon the side of the engine; second, that it was negligence for the railway company to permit an engine to be used which was leaking a great deal of steam, and that the cause of the death of Mr. Ball was that he could not see the bridge, which the train was approaching, because of the escape of steam from the engine upon the side he was riding on; and third, that the engineer was negligent in not warning Mr. Ball of the bridge which the train was approaching. We are satisfied that neither the first nor third of these allegations are negligence, either in law or fact, and, for that reason, the trial court should have withdrawn them from the consideration of the jury.

I. The evidence offered on behalf of the defendant shows that this bridge was one of a number of like bridges upon this division of the Northern Pacific Railway; that it was a bridge of standard construction, fourteen feet six inches wide in the clear between sides; and that there was a clearance of twenty-four and one-half inches between the side of the engine and the side of the bridge. The evidence of the plaintiff also shows that the side of the bridge upon which the deceased was killed was approximately two feet from the side of the engine. Evidence was offered on the part of the plaintiff to the effect that, in cities and in railroad yards, bridges were constructed somewhat wider than the bridge here in question; but there is no evidence in the record to show that bridges upon the main lines outside of cities and towns were necessary to be constructed of greater width than this bridge, although there is evidence that on some of the roads bridges six

inches wider are constructed. But however that fact may be, it is plain, we think, under the authorities, that a railroad company has the right to use its own method in the construction of its track and bridges, which, if reasonably safe and the danger is open and apparent, would not constitute negligence. *Sainis v. Northern Pac. R. Co.,* 87 Wash. 18, 151 Pac. 93.

In the case of *Krebbs v. Oregon R. & Nav. Co.,* 40 Wash. 138, 82 Pac. 130, we said:

"What duty did the appellants owe the respondent in the construction and maintenance of bridges, situated as this one was? Numerous cases are cited where railway companies have been held liable to employees for injuries received from section houses, depots, coal sheds, signal posts, telegraph poles, etc., situated too close to the track. These structures differ materially from railroad bridges, which constitute a permanent part of the roadbed, and are of necessity part and parcel thereof."

and then, after referring to *Bryce v. Chicago, M. & St. P. R. Co.,* 103 Iowa 665, 72 N. W. 780, and after quoting from that decision, we said:

"We are of the opinion that the correct rule is announced by the supreme court of Iowa in the case above cited. If the employees of a railroad company are required to be on the sides of its cars in the discharge of their duty, as the trains pass over bridges, it is incumbent on the company to so construct and maintain its bridges as to make them reasonably safe for such use. But if the employees are not required to be on the side of the cars at such times, the company violates no duty it owes them by failing to construct its bridges of sufficient width to permit of an employee riding on the side of a car over a bridge."

In the case of *Cleveland, C., C. & St. L. R. Co. v. Haas,* 35 Ind. App. 626, 74 N. E. 1003, the appellate court of Indiana said:

22—102 WASH.

"If defendant was guilty of negligence in maintaining the bridge, it was because of its insufficient width. The question therefore is, what should have been the width of such structure? Naturally its width should have reference to the use for which it was intended. In *Illick v. Flint, etc. R. Co.* (1888), 67 Mich. 632, 35 N. W. 708, it is shown that the standard width is fourteen feet, and the bridge in question was only thirteen feet and four inches wide, yet it was held that the company was not negligent in so maintaining it. In the opinion the negligence of the plaintiff's intestate is held by Sherwood and Champlain, JJ., to preclude a recovery, Morse, J., reserving his opinion; but all concur in holding that the negligence of the defendant was not shown by the evidence. In *Sheeler's Administrator v. Chesapeake, etc., R. Co.* (1885), 81 Va. 188, 59 Am. Rep. 654, the sides of the bridge were only thirteen and one-half inches from passing engines, but the court held that there was no negligence in this respect."

A large number of other cases are considered in that opinion where it was held that there was no negligence in the construction of bridges such as this, and where employees were not required to be on the sides of the trains when passing over them. We think there can be no doubt upon this question. The evidence shows that Mr. Ball had been over this division and over this particular bridge more than four hundred times in both daylight and darkness. It is not claimed, as we understand the record, that it was necessary for a brakeman to be upon the side of the car or upon the side of the engine when passing over this bridge. While the rules of the company required the brakeman to inspect hot boxes upon trains, no rule of the company is shown where brakemen are required to be upon the side of the engine of a moving train in order to make such inspection. These inspections, of course, were made when the train was stopped. This bridge, having a clearance of nearly two feet from the side

of the engine, was perfectly safe for the use which was to be made of it, and it was not anticipated, and could not be anticipated by the railway company, that any person would extend out from the side of the train so far that he could be injured by the sides of the bridge. We think it is plain that no negligence can be attributed to the railway company for the construction and maintenance of the bridge in the way it was.

II.   It is next argued that the railway company was guilty of negligence because the engine pulling the train leaked steam to such an extent that the brakeman could not see the bridge which the train was approaching.   While the evidence shows that engines of this character necessarily leak some steam at all times from the oiling apparatus or from the movable joints in the steam pipes, yet there is some evidence tending to establish the fact that the engine began to leak steam shortly after leaving the roundhouse, and that the condition became worse as the trip progressed, and by the time of the accident the engine was leaking a great amount of steam.   These facts were sufficient to carry the case to the jury on the issue of the company's negligence in operating this particular engine at the time in violation of the employers' liability act, which prohibits the operation of an engine in a defective condition.   The plaintiff was entitled to have the jury pass upon the question as to whether there was an escape of more than the ordinary amount of steam, and whether that was the proximate cause of the injury. If the defendant was negligent, the question whether the employee would be held to have assumed the risk was one for the jury.

III.   It is next claimed that the engineer was negligent because he did not notify the deceased when the train was approaching the bridge.   Assuming that the

engineer knew that the deceased was about to examine into the condition of the hot box and did not know of the near approach of the bridge, it cannot be assumed that the engineer knew that the deceased would hang himself so far out at the side of the train that he would be struck by the bridge. The evidence shows conclusively that, as soon as the engineer saw the position in which the deceased was before he met his death, the engineer called to the deceased and immediately attempted to stop the train; but he was too late. We think that there can be no possible excuse or reason for claiming that the engineer was negligent in not discovering the position of Mr. Ball before the accident happened. We are clear that no negligence in this respect was shown against the railway company.

The case will be remanded with directions to grant a new trial upon the issue presented by the second allegation of negligence.

MITCHELL, PARKER, TOLMAN, and HOLCOMB, JJ., concur.